## SPARKS v. GREEN.

1. Practice—Continuance.—Party should not be forced to trial on day supplemental answer is filed.

2. Pleadings.—A Supplemental Pleading may be served on proper notice under order of Court more than two years after action begun.

3. Chattel Mortgages.—Under terms of mortgage here, mortgagee could seize property whenever he deemed proper.

4. Evidence—Practice.—If litigant be uncertain from statement of trial Judge whether he will admit certain testimony, or deemed it important, the proper practice is for him to offer to introduce the evidence, and thus call the attention of the Judge to it.

5. Claim and Delivery—Answer—Supplemental Answer—Defenses—Counter-Claim.—In an action in claim and delivery for crops seized under lien warrant, supplemental answer should be

allowed, alleging that since seizure of the crops and setting aside of first warrant, another had been issued and the crops again seized under a valid warrant by defendant; that plaintiff was indebted to defendant for advances made on the lien; that plaintiff was insolvent, and unless the debt thus due defendant should be paid out of the proceeds of the crops so seized, defendant could not realize anything thereon.

Before GARY, J., Marlboro, May, 1901.    Reversed.

Action by William A. Sparks against Jno. B. Green and Jno. R. Townsend.    From judgment on verdict directed, both sides appeal on following exceptions:

Defendants' exceptions are:

"I. Because his Honor, the presiding Judge, erred in not granting the motion for leave to file the amended and supplemental answers of the defendants, of which notice was given on the tenth day of May, 1901, in the following particulars: (a) In holding that the defenses set up by the amended and supplemental answers were not such defenses as were contemplated by subdivision 2 of section 171 of the Code.    (b) In not holding that the defenses set up by the amended and supplemental answers were maintainable under subdivision 1 of said section 171.    (c) Because the presiding Judge erred in comparing the case of a justification under a trespass to the case before the Court.    (d) Because his Honor erred in holding that the warrant of seizure under which the sheriff proceded on the twentieth day of October, 1896, did not give him authority to take the property of the plaintiff, and that the defendants were trespassers.    (e) In holding that the subsequent proceedings, dated the seventeenth day of September, 1897, accompanied by the liens given by the plaintiff to the defendant, John R. Townsend, would not justify the defendants in detaining the property covered by the said liens, and that such proceedings did not constitute a valid defense to this action.    (f) In holding that the facts set up in the amended and supplemental answers could not be tried in these proceedings.

"II. Because the presiding Judge erred in not continuing the case on the motion of defendants, after defendants' counsel had given notice of intention to appeal from his decision, said notice being dated the sixteenth day of May, 1901.

"III. Because the presiding Judge erred in sustaining the oral demurrer made by plaintiff's attorneys to the supplemental answers which had been allowed to be filed by Judge Buchanan, and in ordering the same to be stricken out in the following particulars: (a) Because, in sustaining the demurrer, he overruled the decision of Judge Buchanan, who heard argument and the validity of the defenses set up by the said supplemental answers, and allowed the same to be filed. (b) Because said supplemental answers did state facts, sufficient to constitute a counter-claim or defense to this action.

"IV. Because the presiding Judge erred in refusing the motion made by the defendants to continue the case after the decision upon the said demurrer, due notice of intention to appeal therefrom being given, and defendants' counsel expressing the desire to have the case continued, in order that such appeal might be heard before the case should be tried.

"V. Because his Honor, the presiding Judge, erred in sustaining the objection to the following question asked the plaintiff, W. A. Sparks, while he was on the witness stand, to wit: 'How much was the whole amount of your account that you made there?'

"VI. Because the presiding Judge erred in sustaining the objection to the following question asked the same witness, viz: 'What went with the rest of the cotton seed?' The ground of the same being that the cotton seed was not an issue in this case.

"VII. Because the presiding Judge erred in sustaining an objection to the following question asked the same witness, on the ground that the same was irrelevant, viz: 'Have you paid Mr. Townsend what you traded under this lien?'

"VIII. Because his Honor, the presiding Judge, erred in sustaining the objection to the following questions asked the same witness, to wit: (a) 'What was the mortgage on the

wagon given for?' (b) 'What did you do with the proceeds of the cotton seed you sold at the oil mill?'

"IX. Because the presiding Judge erred in sustaining objection to the following question asked the defendant's witness, W. J. Atkinson, while on the stand, viz: 'What was said?' Object of the question being to ascertain if the bill of sale given on that day were not intended as security for any accounts that might be made by the plaintiff with the defendant, Townsend, over and above the amount of the lien.

"X. Because his Honor, the presiding Judge, erred in sustaining the objection to the following questions asked the defendant, Townsend: (a) 'What was the character of these dealings?' (b) 'On the back of that mortgage (referring to mortgage on wagon).' (c) 'Was that debt due at the time you brought that proceeding?' (d) 'Was this bill of sale of the 20th of February, 1896 (the bill of sale on the wagon), in the hands of the sheriff at the same time the other was?' (e) 'You stated a while ago that you had never been paid this $649.69, has anybody ever offered to pay it?' The reason given by the Court being that the defendants could not show that the plaintiff owed Mr. Townsend in this action.

"XI. Because the presiding Judge erred in not allowing the defendants' attorneys to prove what was the security or the consideration for which the bill of sale on the horses was given, the horses having been seized under said bill of sale.

"XII. Because the presiding Judge erred in not allowing defendants' attorneys to ask defendant, J. B. Green (sheriff), while on the stand, 'if he had the bill of sale on the wagon at the same time that he had this other bill of sale that has been introduced?'

"XIII. Because the presiding Judge erred in not allowing the witness, J. T. Whittaker, to answer the question, 'What cotton seed?' and in ruling out all of the testimony of this witness, which was offered to show that the plaintiff had disposed of a part of his crops before the foreclosure proceedings were taken out.

"XIV. Because his Honor erred in not allowing the defendant, John R. Townsend, while on the witness stand the last time to answer the question, 'Why did you have the crop levied upon?'

"XV. Because his Honor erred in allowing defendants' counsel to introduce the order of Judge Watts, vacating the warrant of attachment in the case of J. R. Townsend *v*. W. A. Sparks, and also to introduce the remittitur of the Supreme Court in the same case without bringing in the whole record thereof.

"XVI. Because his Honor erred in not allowing J. A. Drake, clerk of the Court, when on the witness stand, to answer the following question, 'When Mr. Sparks was on the stand yesterday, I asked him if you didn't show him these papers when he went into your office, and he denied having seen them, what have you to say?'

"XVII. Because his Honor erred in not allowing the defendant, J. B. Green, when last on the witness stand, to prove that the other warrant under which he had re-seized the cotton and other agricultural products was still in his possession.

"XVIII. Because his Honor erred in directing the verdict of the jury, and in holding that the question of damages was the only issue left for the jury to decide.

"XIX. Because his Honor charged as matter of law that the warrant of foreclosure issued by the clerk of the Court on the 20th day of October, 1896, and placed in the hands of the defendant, J. B. Green, as sheriff, did not give him the authority to seize the property, the agricultural products in question.

"XX. That he erred in charging the jury that the defendant, Green, as sheriff, having seized the agricultural products under that warrant, seized them unlawfully.

"XXI. That his Honor erred in charging the jury as a matter of law, that the plaintiff 'was entitled at their hands to the return of this property, it having been taken from him without due process of law.'

"XXII. Because his Honor erred in holding that the decree of Judge Watts in vacating the warrant of seizure issued by the clerk and the opinion of the Supreme Court sustaining the same, held that the seizure was unlawful, and that the property was taken from the plaintiff by an unauthorized proceeding.

"XXIII. Because his Honor erred in holding in his charge to the jury that the issue as to how much the plaintiff, Sparks, owed the defendant, Townsend, could not 'Arise in this proceeding, because this is a statutory proceeding asking that this property be restored to him,' it being respectfully submitted that his Honor should have charged the jury that the defendant, Townsend, was entitled to affirmative relief, and that the amount due by the plaintiff to him on the lien account should be deducted from the value of the agricultural products seized, and judgment for the balance, if any, rendered in favor of the plaintiff.

"XXIV. Because his Honor erred in directing the jury to find a verdict for the plaintiff for the agricultural products claimed by the complaint.

"XXV. Because his Honor, the presiding Judge, refused to charge the following requests of defendant's attorneys, viz:

"1. The mere fact that a person is the owner of property in the possession of a third person, does not of itself necessarily entitle him to maintain an action of claim and delivery therefor; he must also show that he is entitled to the *immediate* possession thereof, and if he has no such right, he cannot recover, and this right must have existed at the time his action was brought.

"2. If the jury believe that the defendant, Townsend, has a lien of any kind upon the property of the plaintiff, Sparks, and that the defendant came into possession of the said property lawfully, the plaintiff cannot maintain this action of claim and delivery against them therefor until he has paid the amount due under such lien, or has made a valid tender of such amount.

"3. The judgment and order of Judge Watts, in the case of J. R. Townsend v. W. A. Sparks, settled the question as to plaintiff, Sparks', disposition of the crops with intent to defeat the agricultural lien of defendant, Townsend.    If the jury believe that the defendant came into possession of the agricultural products involved in this case under the foreclosure proceedings admitted in evidence in this case, and were so holding them at the time this action was brought, then their possession was lawful.

"5. If the possesion of the defendant was lawful, and the defendant, Townsend, has a lawful lien on the property held by them, then the plaintiff, Sparks, could not recover the same until he had paid the amount due under said lien, or make lawful tender of such amount.

"6. The mere fact that a person is owner of property in the possession of another, does not entitle him to recover the property from that other person. .

"7. If the defendant has a valid lien or liens of any kind upon the property in his possession, which operated as a valid claim thereon, whether it arises under contract or by operation of law, the other cannot recover the same from him until he has paid, or offered to pay, the amount due under the lien or liens, unless the lien or liens has or have in some way been waived, or lost, or forfeited.

"8. In order for the plaintiff to recover, he must show not only that he has title to the property sued for, but he must go further and show that he is entitled to the possession thereof. The title may be in one person and the right to possession may be in another, and if the defendant has a right to the possession thereof, the plaintiff cannot recover.

"9. Unless the jury is satisfied by a preponderance of the evidence that the plaintiff was entitled to the immediate possession of the property at the time demand was made therefor and at the time suit was brought, and is still now entitled thereto, the verdict must be for the defendant.

"10. Under the lien agreement the account for supplies

fell due at the time the crops were gathered, and was to be paid from the crops as fast as gathered.

"11. If the jury believe that Sparks removed any portion of the crops without paying Townsend the proceeds thereof, the law authorizes a foreclosure of the lien, even though the account covered by it was not due. The first seizure of the crops under the foreclosure proceedings was valid until said proceedings were set aside, and the right of defendants to possession of the agricultural products was valid till the final decision of the Supreme Court and the filing of the remittitur with the clerk of this Court.

"12. The plaintiff's right to possession must exist not only at the beginning of the action, but also at its close. If, therefore, the defendants are now rightfully in possession of said property, the plaintiff cannot recover.

"13. If the jury believe from the testimony that the defendant, sheriff, detains the agricultural products under the foreclosure proceedings, dated 17th September, 1897, then such detention is lawful, and the plaintiff cannot recover them in this action.

"14. If the jury believes that the debt secured by the bill of sale on the horses had fallen due, and thereafter the same was foreclosed by seizure by defendant, Green, as agent of defendant, Townsend, as a chattel mortgage, and that the defendant detains said horses by virtue of such foreclosure, the plaintiff cannot recover the said horses in this action.

"15. If the jury believe from the evidence that the defendant came into possession of the agricultural products in dispute under a valid legal warrant, then the taking of said property was not wrongful, although the said warrant was set aside after the commencement of this action for an irregularity subsequently accruing.

"16. If the defendants were in possession of this property and came into possession lawfully, and held valid subsisting liens thereon to secure debts past due, then they had the right to hold the same until their debts were paid, or at least until their liens were satisfied.

"17. A creditor in possession of property subject to a lien held by him, has the right to hold the same until his lien is satisfied, unless. there was a wrong committed by him in taking of same at the time of the taking.

"XXVI. Because his Honor erred in not granting the prayer for affirmative relief of the defendant, John R. Townsend, contained in his original answer, and in not decreeing that the lien account of plaintiff, Sparks, due to defendant, Townsend, should be first paid out of the agricultural products covered by the liens, before Sparks could receive or recover any part of the same.

"XXVII. Because his Honor erred in not granting such order in the premises as would protect the liens of the defendant, Townsend, and because he, in effect, ordered the agricultural products turned over to plaintiff, Sparks, and awaited judgment and execution in favor of Sparks for $608.71, to be paid out of the identical property which the law dedicated to the payment of Townsend's lien account, said property, or the proceeds thereof, being in the possession of the defendants."

Plaintiff's exceptions from order of Judge Buchanan:

"I. Because his Honor, in the matter of the motion for leave to serve supplemental answer, erred in holding that the defendants had a legal right to file and serve the proposed amended answers; whereas, it is submitted, the granting of such motion is matter of judicial discretion.

"II. Because his Honor erred .in not holding that the affidavit upon which said motion was based was insufficient, in that it did not show the matters and things proposed to be set forth in the proposed supplemental answers.

"III. Because his Honor erred in not holding that said motion was fatal, in that copies of the proposed supplemental answers were not served with the motion.

"IV. Because his Honor erred in not holding that: a. Said motion came too late, the action having been pending since October, '93, and said notice of motion not being served until

22d May, '99.   b. Said motion was served pending Court the day case was set for trial, and answers were not served until trial was actually entered upon."

.Plaintiff's exceptions from case before Judge Gary :

"I. That his Honor erred, in that he, in his charge, directed the jury to find for the defendants the horses in dispute, as he thereby caused plaintiff not to offer testimony, which otherwise would have been done, to meet the issue of the right of the defendants to seize and hold the said horses.

"II. That his Honor, by announcing his purpose to direct the jury to find for the plaintiff the property in dispute, including the two horses, erred in subsequently charging the jury to find said horses for the defendants, thereby misleading, inadvertently it may be, plaintiff's counsel, and causing them not to offer testimony to meet the issues in reference to the horses, which otherwise would have been done.

"III. That his Honor erred in directing the jury to find for the defendants the horses in question, as the right of seizure was question of fact of which the jury was the exclusive judicial judge.

"IV. That there being testimony to show that the bills of sale, though absolute on the face, was intended as additional security for the advances made under the liens, the debt was not due, and hence the condition was not due; his Honor, therefore, erred in charging the jury that the defendants had the right of seizure, and instructing them to find a verdict for the defendants, so far as said horses were concerned."

*Messrs. Knox Livingston* and *T. W. Boucher,* for plaintiff.   *Mr. Livingston* cites: *Not error to refuse leave to file supplemental answer:* Code of Proc., secs. 194, 195, 198; 49 S. C., 513; 61 S. C., 135; 15 S. C., 461; 18 S. C., 115; 20 S. C., 269; 54 S. C., 404; Code of Proc., 171; 61 S. C., 315; 57 S. C., 493; 30 S. C., 167.   *Evidence in support of allegations in refused supplemental answers properly excluded:* 30 S. C., 167, 176; 40 S. C., 533; 63 S. C., 571; 65 S. C., 490;

46 S. C., 128.  *Continuance properly refused:* 42 S. C., 207;
51 S. C., 134.  *Amendment alleging new seizure proposes a
material change in defense:* 18 S. C., 305; 21 S. C., 226; 6
S. C., 477, 135; 3 Strob., 190; 14 S. C., 436.  *Statement of
Court misled plaintiff so that he did not show that bills of
sale were mortgages:* 45 S. C., 512; *and that tender of
amount due defendant had been made:* Code, 1902, 3006; 60
S. C., 149.

*Messrs. H. H. Newton* and *T. I. Rogers,* for defendants.
*Mr. Newton* cites: *Notice of appeal should stay proceedings:*
15 S. C., 10; 23 S. C., 106; 24 S. C., 81; 26 S. C., 595.
*Sheriff seizing property under voidable process is not
trespasser:* 2 Brev., 104; 3 McM., 335; 19 S. C., 572;
32 S. C., 556; 19 S. C., 535.  *Supplemental answers
should have been allowed:* Code of Proc., 196; 20 Ency., 1
ed., 1043, 1045; Cobb on Rep., 58; 64 Miss., 304; 39 Cal.,
312; 115 Ill., 490; 15 Mo., 375; 51 Conn., 175; Code of
Proc., 230, 231, 232, 233, 236; 89 Wis., 659; 2 Green N. J.
Eq., 435.  *As to defendant's right to protect his lien to
counter-claim, and to equitable set off:* 22 Ency., 396 to 402;
18 S. C., 115; 45 S. C., 120; 4 S. C., 48; 9 S. C., 582; 19
Ency. P. & P., 718, 719, 720, 721, 743.

May 18, 1904.  The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE POPE.  It seems that William S.
Sparks, in the year 1896 (January 10th), made an arrange-
ment with John R. Townsend to make advances in agricul-
tural supplies to the said Sparks for and during the year
1896, Sparks being a farmer in Marlboro County; Sparks
executed two liens on his crop to secure agricultural ad-
vances, one in the sum of $600, and the other in the sum of
$100.  In order to further secure such advances, he executed
a chattel mortgage on two horses.  The whole amount ad-
vanced to said Sparks by said Townsend was the sum
of $877.84, upon which sum he was given credit by said

Townsend for the sum of $380.15, thus leaving a balance
due to said Townsend by said Sparks of the sum of $497.69.
On the 20th October, 1896, Townsend made an application
to the clerk of the Court of Common Pleas for Marlboro
County, S. C., for a warrant, by which the sheriff of Marl-
boro County was commanded to seize the crops of W. A.
Sparks, covered by the agricultural liens of J. R. Townsend,
and after due notice to sell the same for cash, and out of the
net proceeds thereof, or as much thereof as may be necessary,
to pay over to the said John R. Townsend the sum of
$497.69, in extinguishment of the amount due on said liens.
In accordance with the mandate of said warrant, the sheriff
seized, as the property of the said William A. Sparks, agri-
cultural products, which, when sold, amounted to $602.18;
the said sheriff, John B. Green, was also duly authorized to
seize the two horses of the said W. A. Sparks, covered by
the chattel mortgage, held thereon by John R. Townsend,
and sold the same on the 13th November, 1896, for $170.

On the 30th day of October, 1896, the said Wm. A. Sparks
instituted in the Court of Common Pleas for Marlboro
County his action in claim and delivery against the said
John B. Green and John R. Townsend, by which he sought
to recover the aforesaid agricultural products and said two
horses.  On the 12th December, 1896, after due notice, the
said W. A. Sparks moved before his Honor, Judge Watts, to
set aside the aforesaid warrant issued by said clerk, which
motion, after due hearing thereon, resulted in the passage
of the following order by the aforesaid Judge, to wit: "* * *
It is ordered and adjudged, that the warrant of seizure issued
by the clerk of the Court in above entitled proceedings be,
and the same is hereby, set aside and vacated, without preju-
dice to the plaintiff, Townsend, to take any other or further
proceedings as he may be advised. * * *" From this order of
Judge Watts, an appeal was taken to the Supreme Court,
and after a hearing before said Court, the order of Judge
Watts was affirmed.  See 50 S. C., 380, 27 S. E., 801.  On
the 10th day of September, 1897, the remittitur was sent

14—69

down, and on the 17th of September, 1897, the said John R. Townsend procured a warrant for the seizure of said crops of W. A. Sparks to be issued to the sheriff, J. B. Green, who acting thereupon, reseized said crops of W. A. Sparks, and in obedience to the mandate of said warrant, the said sheriff sold all said agricultural products for cash for the sum of $602.18. After the payment of all expenses, there remains a balance on hand of $625.66, to be applied as may be directed by the Court.

When plaintiff's action was called for trial before Judge Buchanan, in May, 1899, after notice, the attorneys for Green and Townsend made a motion to be allowed to file supplemental answers, and after a hearing thereon, Judge Buchanan passed this order, to wit:

"On reading and filing the affidavit of J. R. Townsend and the notice of motion made thereon for leave to file supplemental answers in the above stated case, and on motion of T. I. Rogers and H. H. Newton, defendants' attorneys, and after hearing Knox Livingston, Esq., in opposition, ordered, that the defendants, J. B. Green and J. R. Townsend, be allowed to make supplemental answers herein, setting up the judgment of the Honorable R. C. Watts, Circuit Judge, dated December 30, 1896, at chambers, vacating the warrant of foreclosure of lien, and the judgment of the Supreme Court affirming the same, filed on the 13th day of September, 1897, and also the foreclosure proceedings before the clerk of the Court, in the case of J. R. Townsend *v.* W. A. Sparks, dated the 17th day of September, 1897, and the warrant issued therein, in the hands of the sheriff, and all the proceedings therein as proposed by the affidavit of J. R. Townsend, one of the defendants; such answers to be served upon the attorney for the plaintiff by nine o'clock a. m. of the 30th May inst.          O. W. BUCHANAN, presiding Judge.

"May 29th, 1899."

We will not reproduce these supplemental answers, because they are virtually the same that are passed upon by Judge Gary in May, 1901.

On the 30th May, 1899, the case first came on for trial before the Hon. O. W. Buchanan and a jury, and resulted in a mistrial. On the 10th day of May, 1901, the defendants' attorneys served upon the attorney for plaintiff the following affidavit and proposed amended and supplemental answers and the exhibits accompanying the same, which are as follows:

"State of South Carolina, County of Marlboro.

"Please take notice that on the affidavit herewith served and on all proceedings in this action, the undersigned will move the Court, on Tuesday, the 14th day of May, instant, at ten o'clock A. M., or as soon thereafter as counsel can be heard, for leave to serve and file the amended and supplemental answers herewith served upon you in the above stated case, and for such other and further relief as may be just."

"John B. Green and J. R. Townsend, being duly sworn, say:

"(1) That they are the defendants above named. That this action was commenced in this Court by the service of a summons and complaint on the 30th day of October, 1896. That the action is brought for the purpose of recovering possession of certain personal property seized by the defendant, J. B. Green, agent, and sheriff, under a bill of sale and proceedings to foreclose an agricultural lien. That issue has been joined therein; that the case is now upon the calendar of this Court awaiting trial.

"(2) Deponents further say that they have read the annexed draft of the proposed amended and supplemental answers, and the facts therein stated are true, to the best of their knowledge and belief. That said facts alleged about the sale of the agricultural products by the defendant, J. B. Green, as sheriff, did not occur until after the service of the original complaint herein, all the other facts having been brought before the Court in a different form in the pleadings hereinbefore filed in the case, and it being sought by the amendment to set forth more clearly the rights and claims of the defendants." Sworn to.

"The defendant, J. B. Green, by way of amendment and supplemental to his original answer and to his supplemental answer filed in the above stated case, alleges:

"I. That on the 23d day of April, 1897, he served his original answer to the complaint in the above stated case; and on the 30th day of May, 1899, he served his supplemental answer in the same, to which answer and supplemental answer this defendant refers as if the same were repeated herein as a part of this amended and supplemental answer.

"II. That under and by virtue of the warrant of foreclosure issued by the clerk of the Court in favor of the defendant, John R. Townsend, against the plaintiff, William A. Sparks, on the 17th day of September, 1897, and the other proceedings of that date, issued by the clerk of the Court, all of which are alleged in paragraphs 3, 4 and 5 of the supplemental answer heretofore filed by this defendant, he duly advertised for sale on the first Monday in April, 1900, the cotton and other products levied upon as stated in said supplemental answer. And he herewith submits as Ex. 'Z' to this answer an itemized statement of the proceeds of sale and expenses, showing the net balance in his hands from the same to be $455.66, and adding to the same the net proceeds of sale of horses, said exhibit shows the total amount in his hands net from all of said sales to be $625.66. The said horses were sold on November 13th, 1896, and brought the sum of $170, and the costs and disbursements of that sale were $15. The said balance of $625.66 is held by this defendant subject to the order of this Court.

"Wherefore, this defendant demands judgment as in his original answer and his supplemental answer is demanded, and prays that he may be hence dismissed, with his reasonable costs and charges."

"The defendant, John R. Townsend, by way of amendment and supplemental to his original answer heretofore filed in the above stated case, alleges:

"I. That on the 27th day of April, 1897, he served his

original answer to the complaint in the above stated case; and on the 30th day of May, 1899, he also served his supplemental answer to the same, to which answer and supplemental answer this defendant refers as if the same were herein repeated and as a part of this his amended and supplemental answer.

"II. For a further defense, this defendant refers to the answer, supplemental answer and amended and supplemental answer of his co-defendant, John B. Green, herein and adopts the same in their entirety as a part of this his amended and supplemental answer herein.

"III. For a further defense and as a matter for affirmative relief, this defendant alleges: (1) That the plaintiff, William A. Sparks, on the 20th day of October, 1896, was indebted to this defendant in a cause of action arising upon an account of goods, wares and merchandise, orders paid, cash and supplies advanced by this defendant to him under two agricultural liens duly given and recorded, covering all the agricultural products involved in this action, in the sum of $497.96, no part of which has ever been paid, copies of which liens, with the indorsements thereon, are attached to the original answer of John B. Green, his co-defendant, marked exhibits 'C' and 'D,' and that said amount of $497.69, as he is advised and believes, together with the interest thereon at the rate of eight per cent. per annum, from November 1st, 1896, is secured by the said liens upon the said agricultural products which are involved in this action. (2) That said agricultural products have been sold under proceedings to foreclose the said liens, and that the fund which represents the same is now in the hands of the sheriff, J. B. Green, his co-defendant, subject to the orders of this Court, and represents the said agricultural products, as this defendant is advised and believes. (3) That on the 10th day of January, 1896, the plaintiff, Sparks, also executed and delivered to this defendant a bill of sale made by him to this defendant, in consideration of the sum of $600, advances in merchandise to be made by this defendant to him, and thereby conveyed to

this defendant one sorrel horse, about four years old, one bay horse, about six years old, the same being in his possession and unincumbered in any way, as he alleged; and in the said bill of sale specified that the said property was subject to the order of this defendant whenever demanded; the said bill of sale being marked as Ex. 'A' to the original answer of J. B. Green, his co-defendant herein, and having been duly recorded. It was given by the plaintiff to this defendant as security for the payment of any amounts that might be due this defendant by the plaintiff for supplies furnished the said plaintiff over and above what the proceeds of the crop made by the plaintiff in 1896 would pay. This defendant fearing the plaintiff might not make sufficient crops to pay for all the supplies which he might buy in 1896, or that the whole of said crops might not be delivered to him in payment of said supplies, took the bill of sale as additional security to the said account. It being distinctly understood and agreed at the time that said bill of sale should secure any amounts advanced and not paid by the agricultural products covered by the lien. The entire account of the plaintiff during the year 1896 contracted with this defendant for supplies amounted to $872.53, and $700 of that amount was covered and secured by the agricultural liens aforesaid, which left $172.53, which, together with such portion of the $700 as was not paid by the agricultural products, was secured by the bill of sale aforesaid. (4) That the plaintiff, Sparks, having disposed of part of the crops covered by said liens with intent to defeat the same, this defendant foreclosed the same and also seized the property covered by the said bill of sale, and such proceedings in relation thereto were had as are set up in the answer, supplemental answer and amended and supplemental answer of his co-defendant, J. B. Green, in this case, to which proceedings and papers all needed reference is hereby craved. (5) This defendant is informed and believes, and so alleges, that the plaintiff is insolvent and owns no property in this county, and that this defendant's lien debts aforesaid cannot be collected except out of the said property in-

volved in this action; and that the matters herein stated will be *res judicata* in case the plaintiff recovers judgment against the defendants without allowing the equities set up by this defendant, and he respectfully submits that this Court will not allow the loss necessarily entailed upon him by refusing the enforcement of a right clear and so just. (6) This defendant is advised that he will be without remedy to collect the said debt secured as aforesaid out of the said Sparks, unless the honorable Court shall decree a settlement of these matters between the plaintiff and this defendant, and grant that protection to the liens aforesaid which this defendant has upon the fund in the hands of the Court and to which this defendant is justly entitled, the granting of which will put an end to the litigation. (7) That the demands of this defendant, herein set forth, arose out of the transactions set forth in the complaint, as the foundation of the plaintiff's claim, and is connected with the subject of the action, as is clearly shown by the facts herein alleged.

"IV. For a further defense and as a counter-claim to plaintiff's alleged cause of action, this defendant alleges: (1) That the plaintiff is indebted to this defendant in the sum of $497.69 for balance on an account of goods, wares and merchandise sold and delivered by this defendant to the plaintiff between the 10th day of January and on the 20th day of October, A. D. 1896, and for orders paid and cash advanced by this defendant to plaintiff within the same time, as per itemized account hereto attached as part of this answer, and interest on the same at eight per cent. per annum, from the first day of November, 1896, to the present time, as is shown by the agricultural lien given to secure the same, referred to herein as exhibits 'C' and 'D' to the original answer of defendant, J. B. Green, herein, as a part of this his amended and supplemental answer. (2) That no part of said balance of account and interest has ever been paid. (3) That the said balance of account is secured by the liens aforesaid and by the bill of sale dated January 10, 1896, exhibited with said original answer of the defendant, J. B.

Green, and hereby referred to as a part of this amended and supplemental answer. (4) That the demand herein set forth arose out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, and is connected with the subject of the action as is shown by the facts herein alleged.

"Wherefore, this defendant demands judgment: (1) As is already demanded in all the answers and amended and supplemental answers heretofore filed in this case. (2) By way of affirmative relief, that this defendant's agricultural liens upon the property and fund in question be protected, and that the fund in the hands of the Court be paid over to this defendant according to his rights in the premises, to go as a credit upon the account of the plaintiff; and that he have judgment for the balance due him by the plaintiff after allowing such credit. (3) That the counter-claim set up by this defendant to the plaintiff's cause of action be allowed, and that this defendant have judgment against the plaintiff for the sum of $678.44, with interest thereon from this date at eight per cent., and that the fund in the hands of the sheriff be applied as a credit upon such judgment, and that execution be awarded against the defendant for the payment of the balance of said account due by him. (4) That a foreclosure of this defendant's bill of sale or mortgage upon the two horses aforesaid of the proceeds of the sale of the same in the hands of the sheriff be allowed, and that the sum be applied to the payment of said account according to the terms of the agreement under which such bill of sale was given. (5) For such other and further relief as may be just and for the cost."

The new proceedings exhibited with the proposed amended and supplemental answers aforesaid are the same exhibited with the supplemental answers allowed by Judge Buchanan above.

The case came on for trial the second time before the Hon. Ernest Gary, presiding Judge, and a jury, on the 15th day of May, 1901, when the last named motion for leave to file

the aforesaid amended and supplemental answers was heard and the motion refused by the following decree:

"This is simply an action for the recovery of certain specific chattels and damages alleged to have been sustained by the plaintiff by reason of the unlawful manner in which the defendant took possession of these chattels. That is his cause of action. (He brings this cause of action into this Court.) He alleges that the defendant has unlawfully taken possession of the personal property and in so doing has damaged him.

"Now, the defendant, in his original answer, virtually admits that he has in his possession the chattels, and justifies his taking of that property under a warrant issued by the clerk of the Court. He justifies his action upon the ground that he is armed with the legal process of the Court. That is properly pleaded, and I think it is a proper defense for him to set up. It is set up in his original answer. Now, the supplemental answer undertakes to set up a fact that did not exist at that time, to wit: a second warrant to seize, issued subsequent to the commencement of this action. Now, it is a general proposition of law that the rights of the plaintiff are to be determined at the commencement of his action. The real question, therefore, is: is this defense set up in supplemental answer, such as to be legally maintained as a defense to the acts complained in the complaint? In passing on that I concede, as stated in subdivision 2 of section 171 of the Code, that the defendant may set forth by answer as many defenses and counter-claims as he may have, whether they have been heretofore denominated as legal or equitable, or both. I concede that. Now the question is: is the defense sought to be set up here an equitable defense as contemplated by that subdivision of section 171 of the Code? I think it is not. Can it be contended that the fact that the defendant, since the commencement of this action, has a second time seized the same property under a different and subsequent warrant, deprive the plaintiff or defeat his original right to recover damages for the trespass heretofore

committed upon him? I will give an illustration by citing an extreme case. For instance, if Mr. McColl had a mortgage covering the house and lot of the sheriff; and he would undertake, after that mortgage became due, to eject him from his premises; and in ejecting him, to commit a trespass; and the sheriff were to bring suit against Mr. McColl for that trespass in ejecting him unlawfully. Could he then, after he was sued by the sheriff, bring his suit to foreclose his mortgage, get a decree of foreclosure and get title, and then plead that as justification for a previous trespass?

"Take another case. Suppose the sheriff without a warrant and authority were to go on the street and undertake to arrest a citizen and he resisted him, and the citizen in resisting was wounded or struck or maimed, and he brought suit for damages against the sheriff for undertaking to arrest him without a warrant, could the sheriff come back and get a legal warrant and plead that in justification of the previous trespass?

"So it is a conceded fact that they seized the property. So far as this agreement goes, it is conceded or, at least, I find from the facts that the warrant of attachment under which the sheriff proceeded did not give him the authority to take this property. Then he had no right to take it, and if he took it without the right and an injury has been committed, or trespass has been commmitted, it is to be passed upon by the jury. Can he then justify the trespass or that act by saying: 'Subsequent to the commencement of this action I got a legal warrant of seizure and seized under this legal warrant.' He may have seized legally under the subsequent warrant, but that cannot justify them for a previous illegal seizure. That is the defense set up in the supplemental answer, and is not, I hold, a valid defense.

"So far as Judge Watts setting aside this attachment 'without prejudice,' I am of the opinion that it ought to have been allowed 'without prejudice,' because it could not be passed upon in this action; and I cannot pass upon it now. And, therefore, in overruling the supplemental answer, I do

it without prejudice; because the facts set up in the supplemental answer cannot be tried in this proceeding. They are no part or parcel of this proceeding and should not be submitted to the jury. If the sheriff went there armed with a warrant that was not legal, and if injury resulted, this suit is to determine that matter. Because he was subsequently armed with a warrant of attachment that was legal, would be no justification, and no defense for his acts previously complained of.

"It is, therefore, ordered, that the motion to file the supplemental answer be refused, this decree having been rendered orally and taken down by the stenographer upon the conclusion of the argument upon said motion."

The case was thereafter peremptorily called for trial, when the defendants moved to continue the case on the ground that they desired to appeal from the Judge's order overruling the motion last named to be heard before the case was tried, but the motion to continue was refused and the case ordered to trial, notwithstanding the notice of appeal had been duly given.

After the jury was empanelled, the plaintiff's attorneys made oral demurrer to the supplemental answer, which had been allowed to be filed by Judge Buchanan, on the ground that the same did not state facts sufficient to constitute a counter-claim or defense, and that no notice of motion to file the same had been given to the plaintiff, and that it had been allowed to be filed after the case was called for trial before Judge Buchanan, and that it had never been served upon the plaintiff's attorneys, but was put in pending the trial. It was shown to the satisfaction of the Court that due notice had been given and that answer had been served and filed in accordance with the order of Judge Buchanan, but the Judge sustained the demurrer and ordered the said supplemental answer stricken out on the ground that the same did not state facts sufficient to constitute a counter-claim or defense. Defendants' counsel thereupon gave due notice of intention to appeal from this decision, and moved that the

case be continued in order to allow such appeal, but the same being opposed by the plaintiff's counsel, the motion to continue was overruled and the defendant ordered to go to trial, to which the defendant's counsel duly made exception.

Thereupon testimony was offered by both the plaintiff and defendants. After testimony the Circuit Judge made the following charge to the jury:

"In settling questions of law in the Court of Common Pleas, under the Constitution of this State, your duties and mine are divided. The Constitution makes it the duty of the presiding Judge to pass on all the questions of law; and it becomes the duty of the jury to pass on all the questions of fact. It becomes my duty to state to you the issues set forth by the pleadings about which you have heard so much discussion by the counsel engaged.

"On the part of the plaintiff, this is simply an action to recover possession of certain personal property described in the complaint. The plaintiff alleging that it was his property and that it was unlawfully taken from him by the defendants.

"The defendants admit that at the time they seized the property of the plaintiff, but they justify the taking of it under what is called a warrant of seizure, based upon an agricultural lien. The sheriff was directed by the clerk of the Court to seize the property under a warrant of seizure. Armed with that authority and a bill of sale, which will be alluded to later on, he seized the property. That is the justification he sets up.

"During the trial of this case you heard a great deal said about the plaintiff being indebted to the defendant, Mr. Townsend. That evidence was ruled out from my construction of the law, the reason being that that issue of the fact of indebtedness cannot be tried in an action of this sort. They cannot try that issue in this proceeding. Therefore, I have undertaken to eliminate from the jury, who are the triers of facts, all extraneous evidence, and only submit to you such issues as I regard proper for you to pass upon.

"Since allusion has been made to the presiding officer of this Court, I will say this: I am not interested on one side or the other of this case; nor is it my purpose or pleasure to decide this case according to my preference of the litigants. Whether I succeed or not, it is my effort to decide every question of law arising in the case as the law is written and not as it affects a certain plaintiff or a certain defendant, and in rendering my charge to you in this case I wish to free your minds of any impression, if such should exist, that I have any more interest in this plaintiff than I have in these defendants. With that I will undertake to submit to you what issues are involved.

"I charge you in the outset, that the Constitution of this State provides that no individual shall be deprived of his property unless by due process of law. It is under that constitutional provision that the plaintiff comes into this Court and demands a return of this property—that the Constitution guarantees unto him that he shall not be deprived of his property without due process of law. Now, the process by which the plaintiff has been deprived of his property in this case is a warrant of seizure issued by the clerk of the Court and placed in the hands of the sheriff. I charge you as a matter of law that that did not give the sheriff the authority to seize that property; I mean by that the agricultural products. I will charge you with reference to the horses later on. The sheriff justifies the seizing of the property by the warrant issued and placed in his hands by the clerk of the Court. I charge you as matter of law, that that did not give him the right to seize that property, and having seized it under that warrant, he seized it unlawfully, and having seized it unlawfully, the plaintiff has the right to your verdict to have it returned to him. Therefore, I charge you as a matter of law, that the plaintiff is entitled at your hands to the return of this property, it having been taken from him without due process of law. Why did I say that it was taken from him by an unauthorized proceeding? It is not my dictum alone; but the Circuit Judge who had the honor to

preside over this Court on December 30th, 1896, passed on the proceedings under which the sheriff took this property, and he said this: 'On hearing the notice of motion and affidavit submitted by the plaintiff respectively in the above entitled action, and after argument of counsel, it is ordered and adjudged, that the warrant of seizue issued by the clerk of the Court in the above entitled proceeding be and the same is hereby set aside and vacated, without prejudice to the plaintiff to take any other or further proceedings as he may be advised. Let the affidavit be filed. It is proper for me to state that my judgment is based solely upon the ground that the affidavit upon which the warrant was issued was not filed with the clerk of the said Court, as required by section 250 and rule 69 of practice of Circuit Courts. The other grounds of the motion to vacate are overruled.' Counsel conceiving that the Circuit Judge in passing that order was probably in error, appealed to the Supreme Court of the State. And the Supreme Court in passing upon the question decide this: (The Court here read the opinion of the Supreme Court in the case of Townsend *v.* Sparks.) The Supreme Court, after reviewing that case, concluded as follows: 'We find no errors in the judgment of the Circuit Court. It is, therefore, affirmed.' Therefore, the highest legal authority in this State has declared that the proceedings by which the sheriff took this property was illegal and of no effect; and if it was illegal, it gave him no authority to take it, and having taken it without authority, the title of it never passed out of the plaintiff, and it is the duty of the Court upon such a statement of affairs to restore to him the property. Now, that is what this means. That is what my directing this verdict means. That the plaintiff has been deprived of his property without a proper warrant of seizure, and that it gave the party that seized it no authority to seize it; and having seized it without authority, when the issue is properly made, it is the duty of a court of justice to return him his property. Under that you do not decide the issues as to how much the plaintiff, Mr. Sparks, owes the defend-

ant, Mr. Townsend, or how much he should pay Mr. Townsend. That issue cannot arise in this proceeding, because this is a statutory proceeding, asking that his property be restored to him. If it has been determined that the property cannot be restored to him, then the question comes up, what was the property worth, and award him judgment for its value; and put them back as they stood at the time the sheriff undertook to seize it under the paper which did not give him authority to seize it.

"Now, for the two horses, I charge you that under this bill of sale he did have the right to seize that property and to hold it. That bill of sale itself gives the defendant the right, upon his order, to take this property, and the defendant having indorsed the order to the sheriff on the back of this bill of sale, that authorized him to take the property. So the defendant is entitled to retain that property under this bill of sale, and the plaintiff has no right to recover it in this action.

"So you will find a verdict for the plaintiff for the agricultural products set out in his complaint, if you find those are the ones. I do not remember that there is any difference in the allegations as to what the sheriff took, as set out in the complaint. There is no dispute as to the agricultural products the sheriff took. So that those articles of agricultural products set out in the complaint you will find for the plaintiff. You should also add to your verdict, that if this property cannot be returned, then we find its value to be so much. You must value it, and that he have judgment for the value of it; and whatever damages you find the plaintiff has sustained by reason of this seizure, you must award him such damages.

"As to the form of your verdict, you say, we find for the plaintiff the agricultural products mentioned in the complaint, and if they cannot be returned to him, then we value such products at so much.

"As to the horses in dispute, you will say, we find for the defendants.

"Mr. Livingston: I would ask your Honor to charge the

jury that as a measure of damages they can charge the highest price of the cotton.

"The Court: In the valuation of the agricultural products you are at liberty to go the highest valuation of the property. Any damages that the proof satisfies you that the plaintiff is entitled to, you give him."

The result of all these actions of the Circuit Judge was that the jury returned the following verdict: "We find for the defendant the two horses. We find for the plaintiff the remaining personal property, and if a return thereon cannot be had, then we find the value thereof, six hundred and eight dollars and seventy-one cents."

Let the reporter include in the report of this case exceptions of both plaintiff and defendant.

We will first dispose of the plaintiff's exceptions.

1. This exception relates to the alleged error of Judge Buchanan in allowing the supplemental answers of defendants to be served on the plaintiff on the 30th day of May, 1899. As the question here involved will be fully discussed when we reach the consideration of the defendants' exceptions to Judge Gary's refusal to allow the supplemental answers of the defendants, we will content ourselves with remarking that such answers should have been allowed by Judge Buchanan; but it must be especially noticed, that if the plaintiff had objected to proceeding to trial on the very day these supplemental answers were served, the trial should have been postponed, if an application therefor had been made by the plaintiff. This Court desires to place upon record its disapproval of forcing an opposing party to trial on the day such an important pleading as a supplemental answer is first filed.

2, 3, 4. The second, third and fourth exceptions of the plaintiff relate to matters of practice, and really do not enter into the substantial merits of the question as to the admissibility of supplemental answers in an action of claim and delivery.

But in regard to the fourth exception; subdivision *a* can-

not be sustained, because during the trial of an action, the Court, the Circuit Judge, has a right to amend the pleadings, and simply because a little over two years and a half had elapsed since the commencing of the action, and the proposed trial of the case, is a matter of no difficulty.

By the record, it would seem to be the first time this case had been called for trial in the Circuit Court. The plaintiff is as much responsible for this delay as are the defendants, so far as the record shows.

Subdivision b. This also is a matter of practice. No question but that defendants should have proceeded with more diligence in the preparation of their supplemental answers, after the time the motion was made before Judge Buchanan; but still such delay on their part did not prevent an application by them to the Court for leave to file such supplemental answers.

Now, as to the plaintiff's appeal from Judge Gary's order. So far as the fourth ground of appeal is concerned, it is clear from the record evidence it was within the option of the defendant, Townsend, to close his chattel mortgage on plaintiff's two horses, whenever he deemed it proper. No doubt, this controlled the Circuit Judge. It was in writing, and it was his duty to construe the written instrument.

As to the first, second and third grounds of appeal by the plaintiff: such grounds of appeal present a very nice question; for by these grounds of appeal the plaintiff alleges that he was misled by an utterance from the bench. We do not see how this can be, because this declaration by the Judge was after all the testimony was in. The plaintiff should at least have offered to introduce his testimony, and thereby called the Circuit Judge's attention to the matter. Eternal vigilance is not only the price of liberty, but it is a watchword for the guidance of counsel while in Court.

We will now recur to the exceptions of defendants. It may be said these exceptions raise practically two questions:

15—69

The first relating to the duty of the Court and the power of the Court to allow a supplemental answer in an action of claim and delivery.   The views of the Circuit Judge are very strongly put, and support with power the danger of allowing matters set up in supplemental pleadings to vary the issues of a plaintiff in claim and delivery.   On this account we have deemed it a duty we owe the Circuit Judge, in our discussion as to the soundness of his views, to reproduce his exact language, which we have already done.   We should always remember that by the Code of our State it is expressly provided that a defendant shall be allowed to set forth in his answer all of his defenses, whether they be legal or equitable.   In our own State we have the following cases upon the question of matters properly embraced in an answer in this character of cases: *Williams* v. *Irby,* 15 S. C., 458; *Talbert & Sons* v. *Padgett,* 30 S. C., 167, 8 S. E., 845; *Badham* v. *Brabham,* 54 S. C., 400, 32 S. E., 444; *Southern Music House* v. *Hornsby,* 45 S. C., 115, 22 S. E., 781; Pom. Code Rem., sec. 767.

In *Williams* v. *Irby, supra,* the Court said: "The plaintiff's action was for the recovery of a specific chattel—a certain bale of cotton.   The defendant's counter-claim originated on a contract, either actual or implied.   It was in no way connected with plaintiff's foundation of action, and it is apparent that it could not be sheltered under either one of the specifications contained in sec. 173 (our Code).   Mr. Pomeroy, in sec. 767 of his admirable work on Remedies and Remedial Rights, says: 'It would seem that in an action to recover the possession of specific chattels, no counter-claim is possible, unless, perhaps, equitable relief may be demanded under some exceptional circumstances.'   The claim of the defendant here is not based upon an equitable right.   His claim is a clear legal claim—a claim growing out of a contract for the enforcement of which he has a plain and adequate remedy of law.   He cannot, therefore, invoke the exceptionable circumstances which it seems from the authority above cited will sometimes allow an exception to

the general rule. He must stand on the general rule, and that rule shuts out his defense."

In *Talbert & Sons* v. *Padgett, supra:* "Now, admitting the allegations of the second defense, do they attack the right of recovery by the plaintiffs on their complaint? We do not see that they do. Admit that the agreement is an instrument in the nature of a mortgage, and that the defendant is entitled to an accounting, that he may redeem the property upon the payment of such amount and expenses as may be actually due, or that the property might be sold and the proceeds applied to said amount, &c. She demands that her contract should be surrendered and cancelled under the judgment of the Court." A demurrer was made to this answer, which demurrer was overruled by Judge Benet, and in considering the appeal from Judge Benet's order, this Court said: "The Circuit decree, order of Judge Benet, now under appeal, is bottomed upon the principle that now, under the principles of our Civil Code of Procedure, there is no longer a separate tribunal for the trial of actions on the law side, nor is there a separate tribunal for the trial of equity actions; both are to be heard in the Court of Common Pleas. A suitor may embody in his complaint a statement of the facts entitling him to legal relief, and in the same complaint a statement of facts entitling him to equitable relief, growing out of the same transaction. So, too, as to defendants; they set up in their answer legal and equitable barriers to plaintiff's recovery, provided, they relate to the same transaction. Here the plaintiff brought its action for claim and delivery—a demand on the law side of the Court. The defendant, however, admitting the legal demand of plaintiff, endeavored to show why, in equity, the plaintiff was not entitled to the judgment prayed for, by alleging that plaintiff's legal demands originated in fraud."

The difficulty the plaintiff alleges to be in the way of the defense interposed by the defendant is that arising under some of our decisions. *Talbert & Sons* v. *Padgett, supra; Singer Man. Co.* v. *Smith,* 40 S. C., 533, 19 S. E., 132. It

occurs to us that the parties here overlooked the case of *Williams* v. *Irby*, 15 S. C., 458, where this Court held that a counter-claim could not be interposed in an action for claim and delivery except to said amount, &c. How does this interfere with the plaintiff's right to recover possession? The matters attempted to be interposed do not strike at the plaintiff's cause of action, to wit: illegally withholding of his property by the defendant, but they present a claim which might arise after the plaintiff recovered possession. They present an equitable cause of action, if anything, of defendants against the plaintiff not now in existence, but that might arise after plaintiff's action ended and he had become possessed of the property, and had refused to do justice to the defendant in the premises.

In the case of *Southern Music House* v. *Hornsby, supra,* which was a case of claim and delivery arising under an instrument in writing, whereby in certain contingencies the plaintiff was to be allowed to repossess itself of one Packard organ, the plaintiff claimed that the contingencies provided in the instrument had occurred; wherefore, a suit in claim and delivery. The defendant admitted that she had executed the paper writing, but, as an affirmative defense, she alleged, that immediately after she made her last payment, she learned that the assurance made to the defendant on the day she executed the agreement in writing by the plaintiff's agent and servant, that the organ in question was new and had never been in use, and that it was in first class condition, was fraudulently made to her; whereas, the truth was, such instrument was an old one and had been in use by another, and after months of such use the instrument had been returned to the company; that the plaintiff thus deliberately disposed of the organ to the defendant through fraud and misrepresentation. This Court there held that the answer of defendant should be allowed to set up her equitable defense, and quoted with approval sec. 767 of Mr. Pomeroy's work on Remedies and Remedial Rights.

Thus it will be seen that this Court has not denied that

there may be an equitable demand in the defendant against the plaintiff's action for claim and delivery. In the case of *Badham* v. *Brabham, supra,* this decision just quoted is fully sustained by the decision there rendered. Now, if under certain circumstances an equitable defense may be set up in the answer itself in actions for claim and delivery, what rule would exclude a setting up of such defenses in a supplemental answer, in a case where a plaintiff seeks claim and delivery. Every matter set up in the supplemental answer grows out of or is inseparably connected with plaintiff's cause of action. Clearly section 198 of our Code legalizes a supplementary answer. Here is the language of that section: "The plaintiff and defendant, respectively, may be allowed, on motion to make a supplemental complaint, answer or reply, alleging facts material to the case occurring after the former complaint, answer or reply, or of which the party was ignorant, when his former pleading was made. And either party may, by leave of the Court, in any pending or future action, set up by a supplemental pleading the judgment or decree of any Court of competent jurisdiction rendered since the commencement of such action, determining the matters in controversy in said action or any part thereof. And if said judgment be set up by the plaintiff, the same shall be without prejudice to any provisional remedies theretofore issued, or other proceedings had in said action on his behalf." See *Copeland* v. *Copeland,* 60 S. C., 135, 38 S. E. 269; *McCaslan* v. *Latimer,* 17 S. C., 123; *Avery* v. *Wilson,* 47 S. C., 78, 25 S. E., 286; *McCrady* v. *Jones,* 36 S. C., 136, 15 S. E., 530; *Arthur* v. *Allen,* 22 S. C., 432; *Mathews* v. *Cantey,* 48 S. C., 588, 26 S. E., 594.

It is unquestionably true, that in the matter of amendments very much is left to the discretion of the Circuit Judge. Nevertheless, this Court is required in proper cases to review his action in granting or refusing the motion for leave to file a supplemental answer, where the order of the Circuit Judge involves error of law or abuse of discretion. Take the case now under consideration. In this instance, after the sheriff

had seized the crops upon the authority of the clerk of the Court of Common Pleas, who had issued his warrant to said sheriff, requiring him to seize certain agricultural products, because of a violation of the statute law of this State, relating to the lien law, the said warrant was set aside because of a failure of the lienee to have a certain affidavit filed in the office of the clerk of the Court within the ten days succeeding the issuance of the clerk's warrant, and the Circuit Judge, who set aside the warrant of seizure, was careful to insert in the order therefor, a *proviso,* that his action should be without prejudice to the right of the lienee to take such other steps in the assertion of his rights as should be proper. When the said warrant of seizure was declared inoperative by reason of the judgment of this Court, affirming, as it did, the order of Judge Watts, which was without prejudice to the defendant's right to renew his application for a warrant of seizure; when afterwards a new warrant of seizure was issued by said clerk of Court at the instance of the defendant, John R. Townsend, as the lienee, and the sheriff acted thereon and actually sold the said agricultural products, does it not seem that such facts were of so serious consequence as that setting them up in a supplemental answer was highly proper?

Besides, the insolvency of the plaintiff was a most material allegation to be brought to the Court's attention, which could only be done by the use of a supplemental answer. Suppose, for instance, the pleadings in their original state had alone been presented to the Court, the fact that the sheriff had made his original seizure under a warrant which had been set aside by the Circuit Judge, which action by such Circuit Judge had been affirmed by this Court, being alone before the Court, the verdict must have been in favor of the plaintiff, thereby enabling him to recover every dollar on the value of his agricultural products; and he being insolvent, the defendant, Townsend, would have been absolutely remediless. To our minds, therefore, it seems that there was error on the part of the Circuit Judge in holding that

the supplemental answers in this case should not be received. Before passing away from this branch of the case, we desire to say that the Circuit Judge met this question without paying any attention to any technical question as to the delay in serving the notice or any similar technical remedy.

The second set of questions relate to the refusal of the Judge to admit any testimony touching the matters of fact set up by the supplemental answer. He refused to admit this testimony upon 'the ground that he deemed the supplemental answer as improper, but we having just held that his refusal to admit such supplemental answer was an error, and, therefore, he was in error in ruling out such testimony as supporting this supplemental answer. We must, therefore, sustain the exceptions of the defendants, which will necessitate a new trial in the Court below upon the principles hereinbefore declared by us.

It is the judgment of this Court, that the judgment of the Court below be and is hereby reversed, and that this action be remitted to the Circuit Court for a new trial.

MR. JUSTICE GARY *concurs in the result.*