## STATE v. ROBERTSON.

1. CHARGE—HARMLESS ERROR—CRIMINAL LAW—MANSLAUGHTER.— Where a defendant in a murder trial is convicted of manslaughter, an instruction to the jury that if the facts showed that the encounter

arose out of the misconduct of the defendant, the law infers malice, is harmless error, if such charge be admitted to be erroneous.

2. JURIES AND JURY TRIALS—CIRCUIT JUDGE—APPEAL.—The finding by a Circuit Judge that a juror is "indifferent" cannot be reviewed by this Court. Difference between indifference and disqualification of jurors discussed. *State* v. *Merriman*, 34 S. C., 16, *distinguished from this.*

3. IBID.—The practice of inquiry as to how a juror voted in the jury room condemned.

Before GARY, J., Greenville, spring term, 1897. Affirmed.

Indictment against W. W. Robertson for murder. Defendant convicted of manslaughter and appeals.

*Mr. J. A. Mooney,* for appellant, cites : *Malice cannot be presumed from the fact that the encounter arose out of the misconduct of the defendant:* 57 Am. St. R., 337; 30 L. R. A., 407; 46 Am. St. R., 259; 60 Ib., 17; 28 Ib., 944; 28 Tex., 584; 134 Ill., 110. *Motion for new trial on ground of disqualified juror not too late:* 1 Bay, 373; 36 Am. Dec., 527; 21 Am. Dec., 122; 16 Con., 555; 4 Sneed, 340; 3 Stev., 1, 308; 9 Am. Dec., 79; 7 Port., 187; 20 Kan., 57; 13 N. H., 491; 23 Gratt,. 919; 11 Leigh., 657; 42 Tex., 377; 4 Ind., 438; 76 Am. Dec., 402; 65 Ibid., 264; 2 Bay, 151, 153; 2 McC., 12; 34 S. C., 16; Rev. Stat., 2406; 8 S. C., 237; 2 N. & McC., 6, 79, 261; 7 Rich., 417; 1 Am. Dec., 65; 39 Am. St. R., 855; 42 Am. St. R., 454; 65 Am. Dec., 280.

*Mr. Solicitor Ansel,* contra. Oral argument.

January 3, 1899. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The defendant was indicted for murder, and was convicted of manslaughter with a recommendation to mercy, and from the judgment rendered upon such verdict, the defendant appeals upon the following grounds: 1st. "That his Honor, the presiding

Judge erred in charging the jury as follows: 'Now, when the killing is in a quarrel and encounter, if the facts show that it arose out of the misconduct of the defendant, the law says that malice on the part of the defendant is inferred.'" 2d. "That the presiding Judge erred in not granting defendant's motion for a new trial: (a) It having been shown and admitted that the juror, Cunningham, had served as a petit juror in the former trial of this case, and which fact was unknown to the defendant and his counsel, until after the trial herein. (b) It appearing by affidavit that the said juror voted at the former trial of said case for a verdict of manslaughter." In the "Case" we find the following statement: "It is admitted that at the term of the Court preceding that at which the defendant was tried and convicted of manslaughter, and from which this appeal is taken, the said defendant was tried under said indictment, and a mistrial was had. That at said trial the above named juror, H. B. Cunningham, was a member of the panel and voted for a verdict of manslaughter. That when said juror was called and examined upon his *voir dire* at the last trial of said cause, neither the defendant nor his counsel knew that he had served on the jury at the former trial, and did not ascertain that fact until after the trial and verdict, when the defendant's counsel was informed of it by an officer of the court. That the above facts were made to appear by affidavit, and a motion for a new trial was duly made before the presiding Judge upon that ground, among others, and said motion was refused, and the defendant sentenced to two years in the State penitentiary at hard labor. The evidence was the same at both trials." It also appears from the "Case" that when the juror, Cunningham, was examined on his *voir dire,* the following occurred: "Q. Have you formed or expressed an opinion as to the guilt or innocence of the defendant, Robertson? A. Yes, sir. Q. Upon what was the opinion based? A. From what I heard of the evidence. Q. Notwithstanding that opinion, do you think you can give the prisoner a fair and impartial trial, according to the

law and the evidence as you may hear here? A. Yes, sir, I think so. Q. Have you any bias or prejudice against the prisoner at the bar? A. No, sir." Whereupon the juror was sworn. It does not appear that the prisoner had exhausted his peremptory challenges before reaching this juror—nor does it appear that he challenged the said juror.

Inasmuch as the appellant was convicted of manslaughter only, which wholly excludes the idea of malice, it is very manifest that the first ground of appeal cannot be sustained. For, even if the proposition of law excepted to be erroneous, it is quite certain that such error was entirely harmless, as the verdict demonstrated that the jury did not believe that the killing was actuated by malice. Hence any inquiry into the correctness of the proposition of law, in the Judge's charge, to which error is imputed, would be purely speculative, and cannot, therefore, be properly pursued in this case.

The second ground of appeal presents questions of an important character, which demand the serious consideration of this Court. It must be remembered that in the present Constitution, unlike that of 1868, it has been declared, in mandatory terms, as follows: "The petit jury of the Circuit Courts shall consist of twelve men, all of whom must agree to a verdict in order to render the same," and further that: "each juror must be a qualified elector under the provisions of this Constitution, between the "ages of twenty-one and sixty-five years, and of good moral character," Const., art. V., sec. 22. Hence, when the fact has been ascertained by the proper authority, invested with jurisdiction to determine the same, that one or more of the body of persons organized as a jury did not possess the qualifications required by the Constitution, their verdict must be set aside upon the ground that it was not the verdict of a constitutional jury. *Garrett* v. *Weinberg, ante.* But in the case now under consideration, the objection to the juror, Cunningham was not based upon the ground of lack of any one of the qualifications prescribed by the Constitution, and

hence the decision in the case just cited does not conclude the inquiry.    Here the objection to the juror in question was based upon the ground---*not* that he was disqualified from serving as a juror in any cause—but that he was disqualified from serving as such in this particular case, because of the fact that he was not "indifferent" (as it is termed in the statute) as between the parties to this case, by reason of the fact that he had served as a member of the jury to which this case had been committed at the preceding term of the Court, when the jury failed to agree and a mistrial was ordered, and had then formed and expressed an opinion as to the guilt or innocence of the defendant.    Every fair-minded person will readily recognize the importance of having the jury, to whom a case is submitted for trial, composed of persons who, as far as practicable, are free from any bias or prejudice, either for or against one or the other of the parties, whether the same arises from interest by reason of relationship or otherwise, or from having previously formed or expressed an opinion as to the merits of the controversy. The law-making power recognizing the importance of this matter has made ample provision for attaining the desired end.    For it is provided in sec. 2403 of the Rev. Stat. of 1893, that: "The Court shall, on motion of either party in suit, examine, on oath, any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection.    If it appears to the Court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called."    This statute has been construed by the late Chief Justice Simpson, in the case of *The State* v. *Williams,* 31 S. C., 238, as investing the Circuit Judge with exclusive power to determine whether a given juror, after examination on his *voir dire,* is indifferent in the cause; and that construction has been adopted in the fol-

lowing subsequent cases: *State* v. *Merriman,* 34 S. C., 16; *State* v. *James,* 34 S. C., 49; *State* v. *Haines,* 36 S. C., 504. and *Sims v. Jones* 43, S. C., 91. It is true, that the writer of this opinion, in the *City Council* v. *Fowler,* 48 S. C., at pp. 18-19, made some passing remarks which, possibly, may be regarded as calculated to throw some doubt upon the construction given to section 2261 of the Gen. Stat. of 1882, now incorporated in the Rev. Stat. of 1893 as section 2403, by the late Chief Justice Simpson, in *State* v. *Williams, supra,* but the writer, in making those remarks, evidently overlooked the fact that such construction had been recognized and followed in at least four subsequent cases---a number quite sufficient to settle the question. Besides, this case differs materially from the case of *City Council* v. *Fowler, supra;* for there the juror in question had not been examined on his *voir dire,* and the question as to whether he was indifferent in the cause had not been determined by any competent authority, while here the juror in question *was* examined upon his *voir dire,* and after such examination the Circuit Judge, who was invested with authority to determine the question as to whether he was indifferent in the cause, has determined that he was a competent juror; and his determination of this question of fact cannot be reviewed by this Court. Besides, the law makes other provision to enable the accused to scan the list of those who are presented to him as jurors, in a case like this, and thus to ascertain whether there is the name of any person upon the list who is objectionable as a juror. In *State* v. *Fisher,* 2 N. & McC., 261, it was held that the prisoner had a right to a copy of the indictment, and a list of the persons empanelled as jurors for the trial of cases during the term; and as was said in that case: "The end and design of which was to enable him to ascertain the character and qualification of the jurors who were to sit on his trial, and if he would not do so, he should not be permitted to take advantage of his own negligence." The point made by counsel for appellant, that: "Since the case of the *State* v. *Merriman,* 34 S. C., 16, the defendant is

not entitled to demand a list of the jurors," is based upon a
misapprehension of that case.    There the point decided was
that the jury commissioners were not bound to furnish a
copy of the list of persons drawn by the jury commissioners
at the beginning of the year, whose names are to be placed in
the jury box, from which jurors are to be drawn to serve as
such at the several terms of the Court during the year, to
any person who chooses to ask for it, or to submit the same
for his inspection.    But that does not refer to or in any way
interfere with the right of the accused, in a capital case, to
demand *from the clerk of the court* a copy of the indictment
and a list of jurors *drawn, summoned and empanelled* for
service as such during the term of the Court at which the
case is tried.    It is true, that it is stated in the case that it
was made to appear, on the hearing of the motion for a new
trial, that the fact that the juror, Cunnungham, had served
as a juror "in a former trial of this case," and that this fact
"was unknown to the defendant and his counsel until after
the trial herein."    But while it is not difficult to believe that
the fact might have been unknown to his counsel in this trial,
as the appellant may have had other counsel at the previous
term when there was a mistrial, or that counsel, in the multi-
plicity of other engagements, might have overlooked the
fact, yet we find it very difficult, if not impossible, to con-
ceive how the appellant could have overlooked such a fact;
for when we remember the solemn formalities always ob-
served in organizing a jury for the trial of a capital case, by
which the attention of the prisoner is called especially to
each juror as he is presented, it is almost incredible that a
person on trial for his life, should overlook the fact that one
of the persons presented to him as a juror had served as a
juror at the preceding term of the Court, upon the trial of
his case.    But waiving this, and accepting as true the fact
stated in the "Case," that neither the appellant nor his coun-
sel knew that the juror, Cunningham, had served as a juror
at the preceding term of the Court in the same case, until
after the trial herein, we still think that there was no error

on the part of the Circuit Judge in refusing the motion for a
new trial upon this ground.    For while it is true that, in the
cases of *Kennedy* v. *Williams,* 2 N. & McC., 79, and *Gar-
rett* v. *Weinberg, supra,* some stress is laid, and, in a proper
case, properly laid, on the fact that the disqualification of the
juror was not known to the party or his counsel until after
the trial, yet we think this should be qualified by the proviso
that such ignorance is not due to the want of diligence; for
where the disqualification relied on might have been discov-
ered by the exercise of ordinary diligence, it affords no ex-
cuse for failing to make the objection in due season; for, as
was said in *State* v. *Fisher, supra,* a party "should not be
permitted to take advantage of his own negligence."    In
this case, as we have seen, the appellant failed to make use
of the means afforded by the law to enable him to ascertain
the qualifications of each juror presented, and he must take
the consequences of his own default.

The second subdivision of exception two, based upon the
ground that it appeared by affidavit: "That the said juror
voted at the former trial of said case for a verdict of man-
slaughter," not only cannot be sustained, but calls for repro-
bation.    The practice of invading the privacy of the
jury room for the purpose of ascertaining the views
of any one or more of the jurors, as to the case, has
never been sanctioned in this State, and has, in some of the
cases, been severely condemned.    Indeed, it has been held
that affidavits, tending to show the views presented by any
juror, or the reasons which influenced the verdict, will not
be heard by the Court, except for the purpose of showing
misconduct so gross on the part of a juror as to call for his
punishment.    *Sheppard* v. *Lark,* 2 Bail., 576; *Smith* v. *Cul-
bertson,* 9 Rich., 106, recognized and followed in *Reaves* v.
*Moody,* 15 Rich., 312.    We do not think, therefore, that the
affidavit referred to should have been received, and the state-
ment therein made should be disregarded.    The Court has
no right to know, and no legal means of ascertaining, how
the juror voted at the former trial.

Upon what grounds the Circuit Judge based his refusal
of the motion for a new trial is not disclosed by the "Case,"
and we are without any means of ascertaining what were
the reasons for his action.    We have, therefore, been com-
pelled to consider the question in all of its aspects, and so
considering it, we see no ground for reversing the judgment
below.

The judgment of this Court is, that the judgment of the
Circuit Court be affirmed.