6865

BLASSINGAME v. CITY OF LAURENS.

1. WAIVER—NONSUIT.—That a member of a city council told a contractor his bid and acceptance on the minutes was a sufficient contract in writing and that city permitted him to make preparation and begin work without executing a written contract and bond, is some evidence of waiver of this stipulation by the city.

2. EVIDENCE.—A defendant can not have evidence responsive to an irrelevant allegation in a complaint which he has permitted to remain therein, stricken out.

3. IBID.—CONTRADICTION.—Previous conversation between an alderman and a contractor as to how the city desired bids for paving to be made is not admissible to explain a bid afterwards submitted, plainly written, or to bind the contractor to make it in the way indicated in the conversation, there having been no effort to mislead the council. Nor is it competent to contradict the contractor after ground laid without objection.

4. CHARGE—CONTRACTS.—Instruction that minds of parties must meet to make a contract is not inconsistent with the instruction that a man will not be allowed to say, he did not know and his mind did not meet that of the other party in executing a written contract clearly expressed.

5. JUROR.—A NEW TRIAL should not be granted because a juror was related to the wife of one of the parties within the sixth degree, where he came into court and went on the panel after the court had asked the whole panel if any of them were related, there having been no request for such inquiry after jury was impaneled in this case.

Before WATTS, J., Laurens, May, 1907.    Affirmed.

Action by J. T. Blassingame against the city of Laurens and its city council. From judgment for plaintiff defendants appeal.

*Messrs. Dial & Todd and Ferguson & Featherstone,* for appellants, cite: *Mistake being pleaded, conversation preceding bid should have been admitted:* 21 Ency., 1097; 1 Green. Ev., 284; 57 S. C., 60. *Contract in writing and bond should have been executed to make out the contract:* 1 Dill., Secs. 259-270; 7 Ency., 140; 87 U. S., 422; 20 Eng. R., 201. *It is error to charge inconsistent propositions:* 2 Thomp. on Trials, Sec. 2326; 11 Ency., 145, 148. *What must concur to make a contract?* 7 Ency., 113; 2 B. & C., 511; 94 U. S., 54; 101 U. S., 882; 31 S. C., 59. *New trial should have been granted because of relationship of juror under facts here:* 54 S. C., 146; 2 N. & M., 79; 55 S. C., 91; 74 S. C., 460; 64 S. C., 201; Thomp. & Mer., Sec. 178.

*Messrs. B. A. Morgan and Simpson, Cooper & Rabb,* for appellant. *Mr. Morgan cites: Conversation between an alderman and contractor before bid submitted properly ruled out:* 46 S. C., 220; 69 S. C., 87; 62 S. C., 14; 77 S. C., 96; 60 S. C., 486; 58 S. C., 59; 57 S. C., 60; 66 S. C., 69. *Instruction as to the general law applicable to contracts is not inconsistent with an instruction as to a special principle:* 75 S. C., 201; 72 S. C., 102; 69 S. C., 387. *Relationship of juror to party is not ground for new trial:* 61 S. C., 147; 71 S. C., 272. *Parties must exercise diligence to as-*

*certain disqualification of jurors:* 54 S. C., 127; 55 S. C., 95.

*Messrs. Simpson, Cooper & Rabb* cite: *Verbal negotiations leading up to contract are merged in writing:* 46 S. C., 229, 411; 17 Wall, 96; 134 U. S., 306. *Party will not be allowed to say he did not understand a plain written contract:* 69 S. C., 90; 60 S. C., 486. *New trial asked on ground of relationship of juror properly refused:* 34 S. C., 33; 61 S. C., 146; 54 S. C., 150; 30 S. C., 105; 2 Bay, 150, 153.

April 14, 1908. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The city council of Laurens, in the Spring of 1904, received bids for the repair and improvement of certain streets of the city. The plaintiff alleges in his complaint the bid submitted by him was accepted; that on the faith of the contract so made, he began the work contracted for, but, by the peremptory order of the city council, enforced by his arrest, he was compelled to stop; and that by this breach of the contract on the part of the defendant, he was damaged five thousand, two hundred and eighty-two dollars and sixteen cents, the alleged difference between the contract price and the sum which the work would have cost. The following is the portion of the written bid submitted by the plaintiff, which gave rise to the controversy: "I will excavate and move from the street, eight inches of Main Street, from the railroad bridge at Mr. Tolbert's house to the old railroad crossing at the old depot, free of charge; and I will grade said said street or any other streets as you may want it at 14 cents per cubic yard, haul not to exceed 500 yards; if so, to be paid one cent per yard every hundred feet. Then I will macadamize said street, or any other streets you may want macadamized, for 32 cents per square yard, said macadam to consist of rock eight inches deep * * *"

The city of Laurens, by its answer, denied the alleged contract and for a further defense alleged: "That shortly after the plaintiff's proposition was made, the said plaintiff and the said defendant to wit, on or about May 5, 1904, discovered that there existed a serious misunderstanding between the said parties, whereupon the said plaintiff and the said defendant agreed that the said plaintiff was to be paid for what work he had already done in accordance with the terms of the said offer claimed to have been made by the said plaintiff, and in addition thereto said plaintiff was to be reimbursed for all expense to which he had been put in getting ready to do said work. And it was then and there agreed by said parties that said new agreement was to be in full settlement of all differences between them and extinguishment of the contract claimed by the said plaintiff to exist." A motion for nonsuit was refused and the plaintiff recovered a verdict for fifteen hundred dollars.

First, was the Court in error in refusing the nonsuit? The motion was made on the ground that the plaintiff's evidence showed there was to be a formal contract drawn up and signed by the parties and a bond given by the plaintiff in compliance with it, and that these conditions were not complied with. The minutes of the council contain this entry: "After deliberation Blassingame's bid was accepted, and agreed to make contract and let Blassingame furnish necessary bond, etc." But the plaintiff testified he was called before the council and notified his bid had been accepted, and in response to his suggestion for immediate preparation of a formal contract, one of the council said the written bid of the plaintiff and its acceptance entered on the minutes was a sufficient contract. Plaintiff further testified in the same meeting he suggested the city retaining ten per cent of the price until the completion and approval of the work instead of taking bond, and one of the council answered that would be all right. This evidence of the plaintiff was corroborated by the fact that he was allowed by the council to incur the expense of prepa-

ration and to proceed with the work without a formal contract and without a bond. All this certainly was some evidence that the city council had determined to waive and dispense with the requirement of a contract signed by both parties, and the execution of a bond by the plaintiff. The motion for nonsuit was, therefore, properly refused.

The defendant insists the evidence of the plaintiff as to the cost of getting ready for the work should have been excluded, because the action was for breach of contract, and the only measure of damages applicable to the case was the difference between the contract price and the cost plaintiff would have incurred in doing the work. The defendant was not in a position to insist on the exclusion of the evidence as irrelevant because the expenditures of money in preparation for the work was alleged in the complaint. If the defendant regarded this allegation as irrelevant a motion should have been made to strike it out. *Ragsdale v. Ry.,* 60 S. C., 381, 38 S. E., 622; *Dent* v. *R. R. Co.,* 8; 61 S. C., 329, 39 S. E., 527; *Martin* v. *Ry. Co.,* 70 S. C., 8, 48 S. E., 61.

As to the evidence, the defendant submits further, there was error in excluding these questions asked the witness, Owings, an alderman of the city: "Did you have any conversation with Mr. Blassingame, the plaintiff here, about wanting him to put in a bid to do this work? Did you have any conversation with Mr. Blassingame and tell him about how the council wanted bids to do this work?" One of the main defenses relied on by the defendant was, that the bid of plaintiff on its face was for macadamizing the streets at thirty-two cents per square yard, whereas the council expected bids for such work by the cubic yard, and inadvertently supposed plaintiff's bid to specify cubic yards, though it was written square yards.. Thirty-two cents per square yard was a price three and a half to four and a half times as great as thirty-two cents per cubic yard. When the bid of plaintiff was considered, the city council had before it a bid for thirty-three cents per cubic yard, but the bid of

plaintiff was accepted on the supposition that it was thirty-two cents per cubic yard, and, therefore, the lowest bid. Assuming the witness would have testified in answer to the question that he expressly notified the plaintiff the city council wished and expected the bids to be made by the cubic yard; and assuming further, that plaintiff agreed so to submit his bid, this would be no ground of escape from a contract made on a bid plainly written on a different basis. It can not be pretended any previous colloquium legally bound the plaintiff to submit any bid at all, and hence, when he did make it, he was as free as to the kind of proposition he would make as the city council was to reject or accept any offer made by him.

There was no evidence of any effort to mislead the city council as to the writing, or to divert their attention from its consideration. Indeed, it was considered, and a conclusion reached about it when the plaintiff was not present. Nor was there any evidence whatever that plaintiff knew the competing bid was for thirty-three cents per cubic yard, and, therefore, lower than his own. Under these circumstances no previous conversation was of any consequence in passing upon the effect of the acceptance of the written offer. The evidence proposed could only show the plaintiff intended to make, and the council expected to receive a different proposition from that actually made, but such intention and such expectation could have no effect to alter the terms of the bid which was submitted, as required by the council, in writing. The language so often quoted from *Murrell* v. *Murrell*, 2 Strob. Eq., 148, 154, is peculiarly applicable: "A party fully competent to protect himself, under no disability, advised as to all circumstances by which he might be saved in his rights, or in a situation where he might, by due diligence, be so advised; not overreached by fraud, concealment or misrepresentation, nor the victim of a mistake against which prudence might have guarded, has no right to call upon courts of justice to protect him against consequences of his own carelessness, and to disturb the

peace of society by his clamors for that justice which he has voluntarily or .negligently surrendered." *Coates* v. *Early,* 46 S. C., 220, 24 S. E., 305; *Bruce* v. *Moon,* 57 S. C., 60, 35 S. E., 415; *Cape Fear Lumber Co.,* v. *Matheson,* 69 S. C., 87, 48 S. E., 111; *Gilchrist* v. *Martin,* Bailey's Eq., 492; *Kentucky W. M. Co.,* v. *Peoples Supply Co.,* 77 S. C., 92.

It is true that plaintiff had denied without objection that he had been told by Owings, at a certain time and place, the council wished bids made by the cubic yard, but it is evident from what has been already said, that any contradiction on this point was irrelevant, because conversations previous to the submission of the written offer were only collateral, not affecting the real issue. *State* v. *Adams,* 49 S. C., 414, 27 S. E., 451; *Willis* v. *Tel. Co.,* 73 S. C., 379, 53 S. E., 639.

The position that the Circuit Judge gave inconsistent instructions to the jury is not tenable. The general proposition that the minds of the parties must meet to make a contract was correctly charged in several different forms by the Circuit Judge. The strongest expression of the rule was an instruction given at the request of the defendant in this language: "If the jury believe, from the evidence, that Mr. Blassingame offered to do certain work for the city of Laurens, at thirty-two cents per square yard, and that the city of Laurens voted to accept said offer, but that a majority of the members of the city council believed that said offer was to do work at thirty-two cents per cubic yard, and voted to accept said offer for that reason, then I charge you that no contract was made, for the reason that the minds of the contracting parties did not meet." This instruction and others like it, the Circuit Judge gave subject to the modifications stated in his general charge. This rule of law that parties must know what they are agreeing to before it becomes their contract is in nowise inconsistent with that other equally familiar and salutary rule stated by the Circuit Judge in his general charge, namely, that a man of

understanding will not be allowed to say he did not know, and his mind did not meet the mind of the other party in the writing which clearly expressed the proposed contract, when in assenting to it he had the writing before him, and there was nothing done by the other party to prevent his full and intelligent consideration of it.

Just before the jury retired, this request was submitted orally: "I will ask your honor to charge, if the jury believed that Mr. Blassingame knew and that council told him that they rejected the bid of Bramlett and Gallagher and agreed to award Blassingame the work at a less price, and that Blassingame accepted this and went to work, that that would be the price that he should be paid. And if he didn't go into a contract, council had the right to stop him. And if he went to work without accepting this proposition, when he knew they only agreed to award him the work at thirty-two cents a yard, he went to work without any contract, and council had a right to stop him." It may be, as suggested in the argument of appellant's counsel, the intention was to request an instruction, if the plaintiff went to work knowing council had made a mistake as to his bid, and supposed they had contracted with him for the work at thirty-two cents per cubic yard, then he was guilty of fraud and could not recover. But the language used is so vague and the meaning of the request so uncertain that it could not have been clear to the Circuit Judge and it could not have failed to confuse the jury. The Circuit Judge responded to the request as favorably as could be expected, in saying: "If Mr. Blassingame went to work with no contract with council, they had a right to stop him at any time."

Lastly it is contended the motion for a new trial should have been granted because of the relationship of the juror, R. W. Willis, to the plaintiff's wife within the sixth degree. We think it evident the Circuit Judge was right in denying the motion, because the defendant had not exercised due diligence to ascertain the rela-

tionship before the trial. When the case was called the court inquired if any juror was related within the sixth degree to the plaintiff, or was employed by the city of Laurens. The juror, Willis, was not then in the court; but came in afterwards and took his seat on the panel, but no request was made that he should be interrogated on the subject of relationship. The statement is made in the affidavit of defendant's counsel that the inquiry from the bench as to the relationship of the jurors was before the jury was empanelled. That being the case, due care certainly required the counsel to bear in mind the probability of jurors coming to the box afterwards from outside the court house, and to request further inquiry after the panel was complete. The rule on the subject is thus stated in *State* v. *Langford,* 74 S. C., 460, 465, 55 S. E., 120: "It is true that in the case of *Garret* v. *Weinberg,* 54 S. C., 127, 35 S. E., 390, this court held that a new trial should be granted if a disqualified juror sat on the case, if neither the party nor his counsel knew of the disqualification until after the verdict; but in the subsequent cases of *State* v. *Robertson,* 54 S. C., 152, 31 S. E., 368, and *Mew* v. *Railway Co.,* 55 S. C., 95, 32 S. E., 828, the Court states the rule that where the disqualification relied on might have been discovered by the exercise of ordinary care, it affords no excuse for failing to make the objection in due season, since a party should not be permitted to take advantage of his own negligence."

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.