13104

STATE v. MEEHAN

(158 S. E., 151)

February, 1930.

*Messrs. Laney & Chapman* and *Philip H. Arrowsmith*, for appellant,

*Mr. M. J. Hough, Solicitor,* and *E. D. Blakeney,* for respondent.

March 19, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The indictment in this case charged that the appellant, "on or about the 5th day of June, 1929, with force and arms, at Chesterfield court house, in the County and State aforesaid, did willfully, unlawfully, and corruptly offer to give to and did then and there give and engage to pay a sum of money, to wit: $95.00 of legal money of the United States, to George W. Gregory, then and now a member of the County Board of Commissioners of Chesterfield County, South Carolina, an appointive tribunal and body as a bribe for the said George W. Gregory, as such member of the County Board of Commissioners of Chesterfield County, in the State aforesaid, to vote and use his influence for the appointment of one T. L. Teal as a tax collector in and for the County of Chesterfield, in the State of South Carolina, said County Board of Commissioners being at the time aforesaid and now authorized and empowered to appoint one or more tax collectors under the law for the aforesaid County of Chesterfield, in said State, against the form of the statute in such cases made and provided and against the peace and dignity of the State."

The indictment was framed to cover the crime commonly referred to as "bribery," as defined and described in Section 337 of the Criminal Code of 1922.

The trial resulted in a verdict of guilty and the sentence of the Court thereupon that the appellant be confined at hard labor for a period of one year upon the public works of Chesterfield County or for a like period in the state penitentiary, and that he pay a fine of $1,000.00.

There are fourteen exceptions to this Court, but appellant's counsel have conceded that these raise only three questions.

That the questions to be decided may be well understood, we give a brief statement of the evidence developed at the trial from the standpoints of both the prosecution and the appellant.

The appellant, as a member of the House of Representatives from Chesterfield County, with the other Representative and the State Senator, had the duty of recommending to the Governor appointments of the Board of County Commissioners for the County. Along with the other members of the legislative delegation, he recommended George W. Gregory, the prosecuting witness, for appointment as a commissioner. The commissioners, under a special statute, are charged with the selection of a tax collector for the county.

According to Gregory, the prosecuting witness, after he became a member of the board, he was approached by appellant in the interest of the appointment of T. L. Teal as tax collector, and was offered and paid money by the appellant for the purpose of securing Gregory's vote for Teal. Gregory contended that he had information that the appellant was given to corrupt practices in public affairs; that he permitted himself to be approached by appellant in the interest of Teal, and accepted the money offered by the appellant, for the purpose of securing evidence against the appellant and having him prosecuted. Shortly after receiving money from the appellant, Gregory reported the matter to Senator W. J. Perry, and these two had a conference with Solicitor Hough. Following the conference, Gregory placed the money he had received from the appellant with the Clerk of Court of the County.

The appellant's defense was that, after he had promised to recommend Gregory for appointment as a commissioner, he ascertained that Gregory was not a proper man to hold the office, as he would likely accept bribes for his votes and influence as a commissioner, and that, for the purpose of

having him removed from office, he set about to secure the necessary evidence to disclose the misconduct of Gregory, that the money which he offered, and actually paid, to Gregory was offered and paid with no corrupt intent on his part, but to carry out the honest purpose he had in mind of serving the public good. It was shown in the evidence offered by the appellant that, upon one occasion when he paid money to Gregory, the transaction was overheard by two persons through the operation of a dictaphone. This transaction occurred after the alleged payment of $95.00 to Gregory by the appellant, upon which the indictment was based. Gregory admitted the receipt of this last payment of $50.00, claiming, however, that it was received for the same honest purpose of exposing the appellant and after he had conferred with Senator Perry and Solicitor Hough, and this amount was also placed by Gregory with the Clerk of Court.

After Gregory had caused a warrant of arrest, charging the appellant with "bribery," to be issued, the appellant accused Gregory before the grand jury with accepting a bribe. The grand jury returned indictments against both Gregory and the appellant, but the record shows that Gregory has not been tried.

Exceptions 1 to 5, inclusive, refer to a matter connected with the argument of the solicitor, who opened for the prosecution. At the conclusion of the solicitor's address to the jury, before commencing his argument for the defense, appellant's counsel made this statement: "In order to preserve our rights I would like to call your attention to, here— the solicitor stated before the jury that when Gregory came to him, the solicitor related before the jury the conversation between him and Gregory and Dr. Perry. All of that was ruled out, and the solicitor related that before the jury and told the jury what he told Gregory and what Gregory told him, and that was all ruled out in the testimony because Meehan was not present, but the solicitor related that and we take exception to it."

The presiding Judge said that he did not recall whether the testimony referred to by counsel had been ruled out or not, but that he would have the stenographer investigate the record during argument of appellant's counsel, and that he would instruct the jury not to pay any attention to what the solicitor had said if the testimony had been ruled out.

After the conclusion of appellant's counsel's argument, the following occurred, according to the transcript of record:

"Mr. Hough: Your Honor called my attention to something I might have said in my argument in relation to a conversation in substance between myself and Mr. Gregory and Dr. Perry in the hearing of the jury.

"Now, Gentlemen of the jury, if I said anything in my argument this morning, made hurriedly, if I said anything that the testimony did not reveal, I desire to withdraw it. I will not misstate intentionally the testimony to any jury.

"The Court: No, sir, I know that and the jury will understand that."

The Court recessed for the noon hour, and, in the afternoon, Hon. M. L. Smith, who was assisting the solicitor in the prosecution, closed the argument.

The matter was again called to the attention of the Court on the motion for a new trial, and it is from the ruling then made that the exceptions under consideration relate. After announcing one of the grounds of the motion for a new trial to be the statement made in the solicitor's argument, counsel for appellant said to the Court: "Now, may it please the Court, I called the attention of the Court to that matter on yesterday, and the Court took cognizance of it and, I think, told the jury at the time to disregard that conversation."

In disposing of that particular ground of the motion, the Circuit Judge gave as his reasons for not sustaining it the following: "That conversation had been ruled out, but the purport of it had gone to the jury in this wise: The witness was not allowed to state the language which passed between

him and the Solicitor, but he was asked what he did in view of that conversation, and that was admitted. The whole effect of that conversation was legitimately in evidence, and I do not think that the statement by the Solicitor could have done any harm with as intelligent a jury as that was, even if it had not been corrected. It would have been corrected immediately, if it had been brought to the attention of the Court immediately when uttered. It was brought to the attention of the Court after the argument, and the Court had the stenographer to look up the record, and it was found that it had been ruled out, and he brought it to the attention of the Solicitor, who asked the jury not to pay any attention to it, and the Court cautioned the jury not to pay any attention to it. I do not think any harm could have occurred to the defendant on account of that."

It is quite impossible for us to say from the record in this case if the language used by the Solicitor in his argument, complained of by the appellant, was objectionable or not. The proper course to be pursued when counsel, in argument, misquotes testimony, or goes out of the record in the case with improper argument, is for the opposing counsel to immediately object and have a record made of the statements or language complained of, and ask the Court for a distinct ruling thereon. *White v. Southern Railway Co.*, 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634, and cases there cited. We have here only the statement of opposing counsel, made after the Solicitor's speech that the Solicitor had used before the jury testimony which the Court had ruled incompetent. None of the language used by the Solicitor in his argument is reported. That should have been set out. *Faris v. Telegraph Co.*, 84 S. C., 102, 65 S. E., 1017.

Conceding, however, that the Solicitor stated to the jury some part of a conversation which had occurred between Gregory, the prosecuting witness, Senator Perry, and the Solicitor, after such testimony had been ruled out by the

Court, we are still unable to hold, under all the circumstances, that there was prejudicial error to the appellant. While the stenographic report in the record before us does not disclose the fact that the Circuit Judge warned the jury not to consider any improper remarks of the Solicitor at the time the Solicitor withdrew, or attempted to withdraw, such remarks, it does appear from the transcript of record that the jury were warned not to consider the statements of the Solicitor complained of by the appellant, for we find in the proceedings on the motion for a new trial that the Judge said, "The Court cautioned the jury not to pay any attention to it." Counsel for the appellant recognized the correctness of the Judge's statement about the matter, for, in argument on the motion for a new trial, he said, "* * * The Court took cognizance of it and, I think, told the jury at the time to disregard that conversation."

In the absence of a sufficient showing to convince us to the contrary, we must also adopt the view of the presiding Judge when he said, "The whole effect of that conversation was legitimately in evidence, and I do not think that the statement by the Solicitor could have done any harm with as intelligent a jury as that was, even if it had not been corrected."

The conduct of a trial must be left largely to the discretion of the presiding Judge. One seeking a new trial because of unfair or improper argument on the part of counsel for the successful party should show these things: (1) That timely objection was interposed to the argument; (2) the substance, at least, of the objectionable language; (3) the failure of the Court to sufficiently warn the jury not to consider the improper argument; and (4) that the result was to materially prejudice the right of the losing litigant to obtain a fair and impartial trial. Many cases in our reports, not necessary to be cited, sustain these propositions. Measured by the required standards, we are

unable to find reversible error in the exceptions as complained of.

The exceptions 6 to 10, inclusive, complain of error on the part of the trial Judge in not granting a new trial, on the ground that one of the jurors had, a few days previous to the trial of the case, stated to at least two other persons, in effect, that he hoped to be a juror on the appellant's case so that he could convict him. An affidavit from the two persons, to whom it was claimed that the juror had made this statement seems to have been presented to the Court, but it is not set forth in the record. We can only gather the contents of the affidavit from the argument of counsel and the remarks of the Circuit Judge in overruling the motion for a new trial. Referring to this matter, the Judge said:

"When the jury were about to be sworn, they were asked individually if they were related by blood or marriage to the prosecuting witness, Gregory, or to the defendant Meehan. Nothing further was asked of the Court. They were not asked to be put upon their *voir dire*.

"There is nothing in this affidavit to show that the statement now relied upon and alleged in this affidavit could not have been obtained by due diligence beforehand. It is stated in argument that it was unknown to defendant until after the trial. The list of jurors was published before Court came on, and if these two affiants here knew of this and did not inform the Solicitor and the defendant and his attorney of this, they were very direlict in their duty as citizens; and it is late in the day for them to come here now and make this statement. The State has no opportunity to reply to these affidavits; they are presented immediately with the motion, and they do not commend themselves to my consideration."

We agree with the Circuit Judge, from the little we can gather from the record in the case, that there was lack of due diligence on the part of the appellant to entitle him to a new trial on the ground that the juror was prejudiced against

him. The statement from the two affiants, as to what the juror had said relative to the appellant's case, was presented to the Court within less than twenty-four hours after the jury had returned their verdict. If the appellant had been as diligent before his conviction as he was after the jury had found him guilty, he could have made the discovery as to the juror's attitude of mind, if the statements contained in the affidavits were true. Appellant not only failed, according to the record before us, to ascertain the standing and character of the jurors who were to try him before the time of trial, although he had opportunity to do so, but he did not even ask that the jurors be sworn on their *voir dire,* so that they might be questioned as to their interest and feelings in the case. The point raised here has been disposed of against the contention of the appellant, on account of his failure to exercise due diligence, by the case of the *State v. Robertson,* 54 S. C., 147, 31 S. E., 868. See, also, *Blassingame v. City of Laurens,* 80 S. C., 38, 61 S. E., 96; *State v. Johnson,* 123 S. C., 50, 115 S. E., 748.

The other exceptions, 11 to 14, inclusive, urge that there were erroneous and harmful instructions given by the presiding Judge in his charge to the jury. We have studied the charge carefully and are unable to agree with the appellant. The case is an unusual one in our State, for we have had few prosecutions for bribery or offer to bribe. The charge of the Court was a fair and clear exposition of the law involved. For the benefit of the bench and bar, we think it well to have it reported, and this will be done. In that connection, the exceptions as to the charge will also be reported, and we think the charge as a whole is a complete answer to the attacks made upon it.

We have given careful attention to the record in the case, and are unable to find any reversible error committed in the trial. If, as appellant's able counsel have so strongly argued, his motive was pure and his conduct was inspired by his desire to expose an unfaithful public official, it is certainly

an unfortunate situation. But this Court is not called upon to decide the questions of fact, which were decided adversely to the appellant's defense by a jury of his own county, which he had the honor to represent in the General Assembly of this State.

The judgment below is affirmed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.

MR. JUSTICE BONHAM did not participate.