14099

STATE v. KENNEDY

(181 S. E., 35)

*Messrs. Brown & Bush, Kearse & Kearse* and *S. G. Mayfield,* for appellant,

*Messrs. B. D. Carter, Solicitor,* and *J. W. Crum,* for the State,

June 27, 1935.

The opinion of the Court was delivered by Mr. Justice Fishburne.

The appellant, R. D. Kennedy, was tried at a special term of the Court of General Sessions for Bamberg County in November, 1934, upon an indictment charging him with the murder of John H. Clark. He was convicted of manslaughter, and was sentenced to serve ten years in the State penitentiary or a like period upon the public works of Bamberg County.

The homicide occurred in the Town of Denmark, in Bamberg County, on July 4, 1933. At the coroner's inquest, which was promptly held following the homicide, S. G. Mayfield, Esquire, appeared as counsel for the appellant; and thereafter, on July 10, 1933, Mr. Mayfield, upon notice

to the State, attempted unsuccessfully to obtain bail for his client before his Honor, Judge H. F. Rice, resident Circuit Judge. Later Messrs. Brown & Bush and J. E. Steadman, Esquire, together with Mr. Mayfield, appeared as counsel for the defendant at the next term of the Court of General Sessions for Bamberg County, convening on the third Monday in September, 1933.

At this term a true bill was returned upon the indictment charging the appellant with the murder of J. H. Clark. The case was called for trial by the solicitor, and continued on motion of the defense.

On October 12, 1933, the motion for bail was renewed before his Honor, Judge Grimball, by Mr. Brown, Mr. Mayfield, and Mr. Steadman, and at this hearing Judge Grimball allowed bail.

At the February term of the Court, 1934, the case was continued on motion of the defendant, Mr. Brown making the motion, but the other counsel herein mentioned also appearing for the defendant.

Prior to the next term of the Court and about two months prior to the trial Mr. Steadman having removed from the State to accept employment with the government in Washington, the firm of Kearse & Kearse, of Bamberg, was added to the defense counsel, and at the following regular term, September, 1934, the case was continued by mutual consent because of the indisposition of the solicitor.

On Monday, November 5, 1934, at a special term of the Court, the State called this case for trial, whereupon the defense moved for a continuance upon the ground that Mr. Brown, chief counsel, was necessarily detained at his home on account of illness. However, Mr. Mayfield and the firm of Kearse & Kearse of defense counsel were present appearing for the appellant. At this stage of the matter, his Honor, Juge Shipp, the presiding Judge, stated that he would postpone the calling of the case until 3 o'clock p. m. Tuesday afternoon, November 6th. When this hour arrived,

the solicitor again pressed for trial, and the motion for continuance was renewed, and refused. The case accordingly proceeded to trial, with Mr. Mayfield, appellant's original attorney, and the firm of Kearse & Kearse appearing for and actually representing the appellant.

The motion for continuance was based solely upon a letter from Mr. Brown to Judge Shipp under date November 6, 1934, and a certificate from Mr. Brown's attending physician to the effect that it was utterly impossible for Mr. Brown, on account of his illness, to attend the trial.

The letter sets out in considerable detail Mr. Brown's connection with the case as chief counsel for the defendant, and his special knowledge of its details and complexities; he having conferred when other counsel were not present with many of the numerous witnesses the defendant expected to use. The letter also stated that there were some features of the case that no one was familiar with except Mr. Brown.

Judge Shipp had this to say in overruling the motion for a continuance:

"I regret very much that Mr. Brown cannot be here. He has written me a lengthy letter, and has gone into details about it, but this case is of long standing and has been continued once by the defense, and at the last term of Court the solicitor was not able to try the case because of illness. However, I have seen Mr. Mayfield in a number of important criminal cases, and I know that he is thoroughly able to take care of the interests of the defendant here. I have seen Mr. Kearse try a number of cases, and he can take care of himself, and only yesterday he tried a case here.

"Where a man has a number of lawyers and one happens to get sick the other lawyers can carry it on, I think. There is a large number of witnesses here from a distance, and as much as I regret it I don't think I can grant a continuance. There is ample legal assistance here."

The exceptions of the appellant raise only one question for us to pass upon, and that is, Did the Circuit Judge err,

under the circumstances related, in refusing to grant the motion for a continuance, and was such refusal an abuse of his judicial discretion?

The authorities in this State are adverse to the position of appellant, and sustain the Circuit Judge.

As declared by this Court in *State v. Crosby,* 160 S. C., 301, 158 S. E., 685, matters of continuance must be left to the sound discretion of the Court, and unless it clearly appears from the record that there was an abuse of discretion, this Court will sustain the action of the trial Judge.

The syllabus .in the case of *State v. Rabens,* 79 S. C., 542, 60 S. E., 442, 1110, which correctly states the holding of the Court, is as follows: "Refusal to continue a case beyond the term under facts here on ground that defendant and his counsel had not had time to properly prepare the defense and on supposition that case would not be tried until next term, also refusal to continue case until next day on account of fatigue of counsel in traveling a long distance, defendant having other able counsel in Court, and Court having no other business, held not an abuse of discretion."

The appeal in the case of *State v. Edwards,* 86 S. C., 215, 68 S. E., 524, 525, presented a far graver issue than is present in this appeal. In that case the defendant was tried and convicted of murder without recommendation to mercy, and sentenced to be hanged. The sole ground of appeal imputed error to the presiding Judge in his refusal to grant a motion for continuance, and in proceeding with the trial. In his order settling the case, the presiding Judge stated his reasons for refusing the motion as follows:

" 'The defendant was arraigned at the previous term of the Court held by the Honorable R. C. Watts. For reasons satisfactory to him, a continuance at that term of the Court was granted. During the progress of the November term this case was called, after having been reached on the calendar, and the solicitor announced promptly that the State was

ready and insisted upon a trial. The docket showed that Mr. Edwards and Mr. Davis were noted as counsel for the defendant, not only at the November term, but were so noted at the previous term. After the announcement made by the solicitor, Mr. Edwards appearing for the defendant, made a motion for the continuance, basing said motion, in part, upon the inclosed certificate and on the further grounds that Mr. Edwards did not feel fully warranted to proceed with the trial. It appeared to me that Mr. Edwards, being a lawyer of experience, was fully capable of managing the defendant's case, and I therefore held that the motion based on this certificate (the same being so very indefinite) was insufficient, and ordered the case to proceed to trial. The case was regularly tried, ably represented by Mr. Edwards, and the result is as appears in the case.'

"The physician's certificate, dated November 1, 1909, was in these words: 'I hereby certify that Mr. G. B. Davis of the Berkeley bar is physically unable to attend Court at this term or to attend to business, either legal or otherwise, at present. (Signed) H. S. Feagin, M.D.' "

The Court held that there was no abuse of discretion, and affirmed the order of the Circuit Court.

The case of *Cutter v. Mallard Lumber Co.,* 99 S. C., 231, 83 S. E., 595, 597, is directly in point, and concludes the issue here. In that case the appeal to this Court was from an order refusing a motion made by the defense for a continuance, such motion being as follows: " 'The first ground of the motion for a new trial is that the Court should have continued the case upon the showing made that Capt. Kelley was engaged in the suit, and that the case should have been continued beyond this Court when Capt. Kelley was taken seriously ill during the term of the Court, and it further appeared that he advised with and was in charge of the case, and that I myself could not go along without his assistance, co-operation, and advice.' It being respectfully submitted that his Honor, the presiding Judge, should have granted a

new trial when it was made to appear to him that the case had been commenced recently; that defendant's senior counsel, who was in thorough touch with the case and who was expected to have charge of the conduct of the trial, had suddenly taken seriously ill and was unable to attend the trial; that defendant's other attorney was gravely embarrassed and labored under serious disadvantage in the trial of the case on account of the absence of said senior counsel, which operated to the injury of the defendant and to the detriment of its case."

In the trial the defendant was represented by associate counsel of conspicuous ability, as in the case here, fully capable of representing it, and it was upon this ground that the Court held that the Circuit Judge did not erroneously exercise his discretion in refusing the motion for a continuance.

It was held in the case of *Crouch v. Cudd*, 158 S. C., 1, 155 S. E., 136, 138: " 'The fundamental principle running throughout the subject of continuances is that the granting or refusal of a continuance rests in the discretion of the Court to which the application is made, and that its ruling in reference thereto will not be disturbed by an appellate tribunal unless an abuse of discretion is shown. This is because the lower Court is apprised of the circumstances of the case and the previous proceedings, and is therefore in a better position to decide on the propriety of granting the application than the appellate Court.' 6 R. C. L., 544. See, also, *Carolina Timber Co. v. Holden*, 90 S. C., 470, 73 S. E., 869; *State v. Kenny*, 77 S. C. [236], 240, 57 S. E., 859."

We must hold here, after a most careful examination of this record, that there was no abuse of discretion on the part of the trial Judge in refusing the continuance asked for.

The appellant was represented by associate counsel, capable, zealous, and experienced, and we cannot conclude from the record that he suffered any prejudice.

The judgment of this Court is that the udgment of the Circuit Court be affirmed.

Mr. Chief Justice Stabler and Messrs. Justices Bonham and Baker concur.

Mr. Justice Carter did not participate in the decision in this case.

On Petition for an Order Staying Remittitur and Allowing Motion for New Trial

August 5, 1935.

*Per curiam.*

The opinion of the Supreme Court affirming the judgment of the Circuit Court was filed on June 27, 1935. On July 6, 1935, within the ten-day period during which the remittitur was still retained by this Court, the defendant, through his attorneys, presented his petition, with supporting affidavits, to the Chief Justice, praying for an order staying the remittitur, and allowing the defendant to make his motion before the whole Court in special session for leave to make a motion in the Circuit Court for a new trial on the ground of after-discovered evidence. Upon consideration of the petition and the affidavits attached, the Chief Justice issued an order staying the remittitur, and granting the motion, which was heard at a special session of the Court held on July 25, 1935.

The practice and procedure followed here is that approved in *State v. Hawkins,* 121 S. C., 290, 114 S. E., 538, 541, 27 A. L. R., 1083, where it was held that "unless it should be shown to the Supreme Court *prima facie* that the defendant is entitled to relief, that Court will take no steps in the matter. If *prima facie* it is shown to the Supreme Court that the defendant is entitled to relief, then the opportunity to get that relief should be and will be afforded him."

The after-discovered evidence upon which the motion is founded consists in an alleged disqualifying statement made

by Edgar Drawdy, one of the jurors who sat upon the defendant's case. The defendant submitted on the hearing before us five affidavits from citizens of Bamberg County to the effect that they heard this juror on Monday morning, November 5, 1934, which was the day the special term of Court convened, make the statement that "he was a juror for that week, and that he hoped he would be drawn to serve on the Kennedy case, and that if he were placed on the jury to try the Kennedy case that he would see that the said R. D. Kennedy got electrocution." These affidavits were accompanied by one from the defendant, bearing date July 6, 1935, in which he states, among other things, "that since deponent has been tried he has learned that at least one of the jurors (Edgar Drawdy) was not an impartial juror."

It is to be noted that nowhere in defendant's affidavit does he make this statement any more definite as to the time when he learned that the juror Drawdy was not impartial, although his trial had occurred more than seven months before. Attention is also invited to the fact that his affidavit, as well as the other affidavits referred to, were prepared and submitted to the Chief Justice of this Court within a very few days following the filing of the opinion of the Court which terminated his appeal adversely.

This Court in recent years has had occasion to pass upon many cases in which questions similar to this were considered.

In *State v. Meehan,* 160 S. C., 111, 158 S. E., 151, 158, tried on the circuit before Judge M. L. Bonham (now Associate Justice), a motion was made for a new trial on the ground that one of the jurors had a few days previous to the trial of the case stated, in effect, to at least two other persons that he hoped to be a juror on appellant's case so that he could convict him. An affidavit from the two persons to whom it was claimed that the juror had made this statement was presented to the Court at the time the motion was made. In overruling the motion the trial Judge said:

" 'There is nothing in this affidavit to show that the statement now relied upon and alleged in this affidavit could not have been obtained by due diligence beforehand. It is stated in argument that it was unknown to defendant until after the trial. The list of jurors was published before Court came on, and if these two affiants here knew of this and did not inform the Solicitor and the defendant and his attorney of this, they were very derelict in their duty as citizens; and it is late in the day for them to come here now and make this statement. The State has no opportunity to reply to these affidavits; they are presented immediately with the motion, and they do not commend themselves to my consideration.' "

An appeal was taken from the order overruling the motion, and this Court held, per Blease, C. J.: "We agree with the Circuit Judge, from the little we can gather from the record in the case, that there was lack of due diligence on the part of the appellant to entitle him to a new trial on the ground that the juror was prejudiced against him. The statement from the two affiants, as to what the juror had said relative to the appellant's case, was presented to the Court within less than twenty-four hours after the jury had returned their verdict. If the appellant had been as diligent before his conviction as he was after the jury had found him guilty, he could have made the discovery as to the juror's attitude of mind, if the statements contained in the affidavits were true. Appellant not only failed, according to the record before us, to ascertain the standing and character of the jurors who were to try him before the time of trial, although he had opportunity to do so, but he did not even ask that the jurors be sworn on their *voir dire,* so that they might be questioned as to their interest and feelings in the case. The point raised here has been disposed of against the contention of the appellant, on account of his failure to exercise due diligence, by the case of *State v. Robertson,* 54 S. C., 147, 31 S. E., 868. See, also, *Blassingame v. City*

*of Laurens,* 80 S. C., 38, 61 S. E., 96; *State v. Johnson,* 123 S. C., 50, 115 S. E., 748." See, also, *State v. Smith,* 165 S. C., 215, 163 S. E., 639, and *State v. Portee,* 122 S. C., 298, 115 S. E., 238, 239.

Likewise the Court (per Marion, J.) stated in *State v. Johnson,* 123 S. C., 50, 115 S. E., 748, 749, in passing upon a similar question:

"But it does not follow that, because the juror was disqualified, the defendant was entitled as a matter of legal right to a new trial on that account. Section 4047 of Civil Code, 1912, expressly requires that 'all objections to jurors,' if not made 'before the juror is impaneled for or charged with the trial of such prosecution,' etc., 'shall be deemed waived; and if made thereafter shall be of none effect.' It is no valid ground for setting aside the verdict of a jury that the moving party was ignorant of the disqualification of a juror, and so failed to challenge him, if the disqualification relied on might have been discovered by the exercise of ordinary care. The rule on the subject is thus stated in *State v. Langford,* 74 S. C., 460, 465, 55 S. E., 120, 122:

" 'It is true that in the case of *Garrett v. Weinberg,* 54 S. C., 127, 31 S. E., 341, 34 S. E., 70, this Court held that a new trial should be granted if a disqualified juror sat on the case, if neither the party nor his counsel knew of the disqualification until after the verdict; but in the subsequent cases of *State v. Robertson,* 54 S. C. [147], 152, 31 S. E., 868, and *Mew v. Railway Co.,* 55 S. C. [90], 95, 32 S. E., 828, the Court states the rule that where the disqualification relied on might have been discovered by the exercise of ordinary care, it affords no excuse for failing to make the objection in due season, since a party should not be permitted to take advantage of his own negligence.'

See *Blassingame v. City of Laurens,* 80 S. C., 38, 46, 61 S. E., 96; *State v. Jones,* 90 S. C., 290, 296, 73 S. E., 177; *State v. Cooler,* 30 S. C., 105, 8 S. E., 692, 3 L. R. A., 181."

Also in *State v. Faries,* 125 S. C., 281, 118 S. E., 620, 621, this Court (per Marion, J.) held that the defendant

received a fair and impartial trial, although the juror in question admitted upon his *voir dire* that he had "expressed the opinion that the defendant ought to be hung"; but qualified the statement by saying, "If the reports he saw were true."

At the hearing of this motion before us, the solicitor submitted, among others, certain affidavits which tended to divulge what had occurred in the jury room, but without reference to these affidavits we are of the opinion that the defendant has failed to make such a *prima facie* showing as would warrant us in granting his motion.

In the trial below each juror as his name was called was placed upon his *voir dire,* not upon the motion of the defense, but upon the motion of the State. This juror denied under oath, and later by affidavit, that he had formed or expressed an opinion as to the guilt or innocence of the accused, and he stated that he was not conscious of any bias or prejudice, either for or against the defendant. The result of the trial shows that he did not stand out for electrocution; the defendant was convicted of manslaughter. This, standing alone, should not be treated as conclusive, but it has its influence, in view of the failure of the defendant to exercise due diligence in bringing the juror's alleged incompetence and disqualification to the attention of the Court. There is nothing in defendant's affidavit to show that the statements now relied upon could not have been obtained by due diligence long before the decision of this Court was made and announced on June 27, 1935, or even during his trial.

The affidavits presented to us in behalf of the defendant tend to show that the disqualifying statement alleged to have been made by the juror, Drawdy, was made several times on the morning Court convened in Bamberg, and certainly in the presence of several groups of people, and was thus widely disseminated.

After a verdict has been rendered, and the jurors have dispersed, their solemn act should not be overthrown and set aside except upon the most convincing showing of prejudice to the defendant—amounting to a denial of a fair and impartial trial. Certainly, after the rendition of a verdict, affidavits attacking the integrity of a juror should be received with great caution, deliberation, and circumspection. In this case every precaution known to the law was duly taken and observed in order that the defendant might have that fair and impartial trial guaranteed to him by the Constitution and laws of this State.

We are impressed with the fine insight and sound reasoning of Judge Robert Aldrich, Acting Associate Justice, in *State v. Jones,* 89 S. C., 41, 71 S. E., 291, 294, Ann. Cas., 1912-D, 1298, where he said: "Nothing is of more frequent occurrence than for men, upon sudden impulse or upon *ex parte* representations of a case, to give expression to their opinions in reference thereto, often in the most violent and feeling manner, and yet these same men, when sworn as jurors and given the opportunity to make up their minds from the evidence adduced, the arguments of counsel and the charge of the Judge, and forced to act upon the solemnity of their oaths and the responsibility of their office. make the most exemplary jurors, and frequently decide in opposition to their preconceived opinions."

It is the judgment of this Court that the motion of the defendant be denied, and that the order heretofore issued, staying the remittitur, be revoked.